WILLARD GRAVES, plaintiff in error, *vs.* HERMAN BRUEN *et al.*, devisees, &c., defendants in error.

*Error to Adams.*

The statute of 1829, for the collection of revenue, dispenses with the rule of the common law which required a party claiming title under special proceedings authorized by statute, by which the estate of one man may be divested and transferred to another, to prove that all the material requisitions of the statute have been complied with, and places the burden of proof, in the first instance, on the party controverting the title claimed under the Auditor's deed.

The listing of lands under this statute is a fundamental requisition, the basis of the right to charge the taxes, and sell the land; and if there was no listing, all sales of land under it were unauthorized and void.

A party is not required to make plenary proof of a negative averment. It is enough that he introduces such testimony as, in the absence of all counter testimony, will afford reasonable ground for presuming that the allegation is true; when this is done the *onus probandi* will be thrown on his adversary.

It was the duty of the Auditor to keep books for the listing of the lands, and to preserve the listing of the lands, and the verification of the same by the parties; and if he omitted to do so, it does not relieve a party asserting a tax title from the necessity of proving the listing of the land, by the best evidence of which the nature of the case is susceptible.

This was an action of ejectment, brought in the Adams Circuit Court, to recover from Graves the possession of the northeast quarter of section number thirteen, in township one south of the base line, in range seven west of the fourth principal meridian. The defendant, in his plea of the general issue, admitted the possession of the premises, and waived all proof in relation thereto. The case was submitted to the Court for trial, without the intervention of a jury. The Court, Minshall, Judge, found for the plaintiffs below, and gave judgment accordingly. Motion for a new trial was made and denied. The defendant then filed his bill of exceptions, which is substantially as follows:

The plaintiffs, to maintain the issue on their part, produced and read in evidence to the Court, a deed executed by the Auditor of state, in due form of law, under his official seal, dated the 2d of March, A. D. 1840, conveying the land in controversy to Mathias Bruen, the original plaintiff in this action, in pursuance of a sale to him by said Auditor, on the tenth day of January, A. D. 1832, but said deed was never recorded in the county of Adams. · The plaintiffs also proved the decease of Mathias Bruen, his last will, &c., and their right to the premises in controversy.

The defendant, to prove the title out of the plaintiffs, and a paramount title in himself, read in evidence a patent from the United States for the said land, to Robert J. L. Austin, dated

6th October, 1817, and a deed, acknowledged, &c., from said Austin to him, dated 17th July, 1837.

To the reading of all which the plaintiffs objected, and the Court sustained the objection. The defendant below, to defeat the title of the plaintiffs under the tax deed, proved that there was not, at the time of the trial, any copy of the Auditor's advertisement for the sale of said lands, for the taxes of 1832, on file in the office of the clerk of the county commissioners' court of said Adams county; and also read in evidence the deposition of Thomas H. Campbell, the Auditor of the state, as follows:

"I hold the office of Auditor of Public Accounts for the state of Illinois; I have held said office since the month of March, A. D. 1846; I was employed in said office from February, A. D. 1843, till I was appointed Auditor.

"*Question* 3. Please state in what manner the north half of section twenty-four, in town. four, and range six, west of the fourth principal meridian, was listed for taxation in said office, from the year 1828 till the year 1836, inclusive?

"*Answer*. So far as I have been able to ascertain, from the books and records on file in my said office, this diagram, marked A, and made a part of my answer, will show the listing of said land, together with others.

"*Question* 4. Is or is not the said diagram an exact copy from the tax books in your said office?

"*Answer*. It is an exact copy of said tax books, so far as relates to the tracts of land therein described, for the time aforesaid.

"*Question* 5. Does it or does it not contain every thing in said books relating to the tracts of land described in said diagram, for the years aforesaid?

"*Answer*. It does.

"*Question* 6. Will you please state whether the said lands are listed in any other manner, in any other books or files belonging to your said office, for the years aforesaid.

"*Answer*. Not to my knowledge. I have examined carefully, and I do not find any different entries or listings of said land, in any of the books or files of my said office.

"*Question* 7. The fifth column in the diagram shown by you has no heading. Will you please state whether there is or is not any heading to that column, in any part of the book from which

Graves *vs.* Bruen *et al.*

the diagram is copied. State, also, from what part of said book the first entry in said diagram is copied?

"*Answer.* There is no heading to said fifth column in any part of said book. The first entry in the diagram is copied from the first page of the book, and is the first entry on said page.

" *Question by plaintiffs on cross-examination.* Will you state what the said fifth column, of which you say there is no heading, contains; what is the use of it; what kind of entries are made in it?

" *Answer.* The names of counties in which the lands were situated appear to be entered in said column."

*Note by the Reporter.*—The names of the patentees and present owners, in the third and fourth columns of the original diagram, and the two last columns, for 1835 and 1836, are omitted, because not necessary to an understanding of the questions involved in the case, and because, to give an exact copy of the diagram, it would be necessary to give it in map form, which would be inconvenient in a law volume.

55

Graves *vs.* Bruen *et al.*

## DIAGRAM A.

*Lands lying between the Illinois and Mississippi rivers, patented by the United States to individuals for their military services, and taxed by the state of Illinois.*

| Abstracts. | Acres. | Patentees. | Present owners. | | Quarter. | Section. | Township and range. | 1828. | 1829. | 1830. | 1831. | 1832. | 1833. | 1834. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 254 | 160 | Names of Patentees omitted. | Names of Present owners omitted. | Schuyler | N E | 4 | 1 S 1 W | 1 60 | 1 82 | 1 60 | 2 40 | 2 40 | — | 1 50 Mont. |
| | 160 | | | do | N W | " | | 1 60 | 1 60 | 1 60 | 2 40 | 2 40 | Mont. | Mont. |
| | 160 | | | do | S E | " | | 1 60 | 1 60 | 1 60 | 2 62 | 2 40 | Mont. | Mont. |
| | 160 | | | Adams | S W | 1 | 1 S 7 W | 1 73 | 1 60 | 1 60 | 2 40 | 2 62 | 2 40 | 2 40 |
| | | | | | N E | " | | 1 60 | 1 60 | 1 82 | 2 40 | 2 40 | Mont. | Mont. |
| | | | | | N W | " | | 1 70 | 1 69 | 1 68 | 2 45 | 2 48 | 2 40 | Adams 2 40 |
| | | | | | S E | " | | 1 84 | 1 60 | 1 60 | 2 40 | 2 40 | 2 40 | do |
| | | | | | S W | 2 | | 1 73 | 80 | 95 | 80, 1 20 | 76, 1 14 | — | 29 Mont. |
| | | | | | S W | " | | 1 60 | 1 60 | 80 | 76, 1 14 | 4, 0 06 | | |
| | | | | | S E | 3 | | 1 60 | 1 60 | 0 04 | 4, 0 13 | 1 39 | | |
| | | | | | S W | " | | 1 60 | 1 71 | 1 60 | 2 02 | 2 40 | 2 40 | Adams |
| | | | | | S E | 4 | | 1 84 | 1 60 | 1 60 | 2 52 | 2 62 | 2 40 | 2 40 |
| | | | | | S E | " | | 1 84 | 1 71 | 1 70 | 2 40 | 2 62 | Adams | Adams 2 40 |
| | | | | | S W | 5 | | 1 60 | 1 60 | 1 68 | 2 48 | 2 48 | 2 40 | 2 40 |
| | | | | | S E | " | | 1 60 | 1 82 | 0 10 | 2 62 | 2 52 | Adams | Adams |
| | | | | | S E | 6 | | 1 60 | 1 60 | 1 71 | 2 40 | 2 52 | | |
| | | | | | E ½ | 7 | | 3 36 | 3 31 | 46 | 1 50, 1 50 | 2 40 | St. Clair 2 40 | Mont. |
| | | | | | N E | 8 | | 1 60 | 1 60 | 68 | 10, 2 40 | 2 40 | Mont. | St. Clair |
| | | | | | N W | " | | 1 60 | 1 60 | 1 60 | Morgan. | 4 92 | Adams | Mont. |
| | | | | | S W | " | | 1 60 | 1 60 | 1 60 | 2 48 | 2 48 | 2 40 | Adams 2 40 |
| | | | | | S E | " | | 1 60 | 1 82 | 1 04 | 2 49 | 2 62 | Mont. | Mont. |
| | | | | Adams | N E | 9 | 1 S 7 W | 1 60 | 1 60 | 77 | 4, 0 06 | 2 62 | 2 40 | 2 40 |
| | | | | | N W | " | | 1 60 | 1 60 | 68 | 1 56, 2 45 | 2 40 | Adams 2 40 | Adams |
| | | | | | S W | " | | 1 60 | 1 60 | 68 | 2 40 | 2 40 | 2 40 | Mont. 2 40 |
| | | | | | | | | | | | 2 48 | 2 46 | | |

Graves *vs.* Bruen *et al.*

Graves *vs.* Bruen *et al.*

## DIAGRAM A—*Continued.*

| Abstracts. | Acres. | Patentees. | Present owners. | Quarter. | Section. | Township and range. | 1828. | 1829. | 1830. | 1831. | 1832. | 1833. | 1834. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Names of Patentees omitted. | Names of Present owners omitted. | | 8 | — | 1 60 | 1 60 | 1 60 | 1 00 Adams 2 40 | 2 40 | Mont. | Mont. |
| | | | | | " | — | Adams | Adams | Adams | 60, 1 08 2 40 | 60 Adams do 2 40 | 60 Adams Adams Mont. | 60 Adams 1 00 do Mont. |
| | | | | | 9 | — | 1 60 | 1 60 | 1 82 | Adams | 1 00 2 40 | 1, 0 01 Adams 2 40 | |
| | | | | | " | — | 1 84 | Adams | Adams | 2 40 | 2 62 | | 2 40 |
| | | | | | " | — | 1 60 | 1 60 | 1 60 | (4), 0 06 1 54, 2 55 | 2 40 2 40 3, 0 04 1 57, 2 68 | Mont. | Mont. |
| | | | | | " | — | 1 60 | 1 60 | 1 82 | 2, 0 03 3, 59 | | | |
| | | | | | 10 | — | 1 73 | 1 60 | 1 82 | (6) 0, 0 07 1 55, 2 54 | — | do | do |
| | | | | | " | — | 1 60 | 1 60 | 1 82 | 2 50 | 2 40 | Mont. | do |
| | | | | | 11 | — | 1 60 | 1 82 | 1 60 | 2 48 | Greene 2 40 | Greene Fayette | Adams 2 40 |
| | | | | | " | — | 1 73 | 1 60 | 1 68 | 2 62 | 2 40 | Mont. | Mont. |
| | | | | | " | — | 1 84 | 1 60 | 1 60 | Adams | 2 50 | Adams | Adams |
| | | | | | " | — | Adams | Adams | Adams | | | | |

AUDITOR'S OFFICE, ILLINOIS, }
*December 31, 1847.* }

I, THOMAS H. CAMPBELL, Auditor of Public Accounts of the state of Illinois, do hereby certify that the foregoing diagram is a true and correct copy from the tax book in my office for the year 1828 to 1836, inclusive, including the headings or caption found on the first page of said book.

In testimony whereof, I have hereunto subscribed my name and affixed the seal of my said office, the day and year above written.

[SEAL.]

THOMAS H. CAMPBELL, *Auditor.*

To the reading and introduction of all which, plaintiffs below objected.    Objection overruled.

The defendant below brings this case to this Court, and assigns for error, that judgment was wrongfully entered for the plaintiffs ; that the Court erred in permitting the tax deed offered by the plaintiffs to be read in evidence, and in refusing to let the defendant read in evidence the said patent and deed, showing a paramount title in him, and also in refusing a motion for a new trial.

WILLIAMS & LAWRENCE, and R. S. BLACKWELL, for plaintiff in error.

BROWNING & BUSHNELL, for the defendants in error.

Opinion by TREAT, C. J.:

The deed from the Auditor recites a sale of the land in question, on the 10th of January, 1833, for the taxes due thereon for the year 1832.    The 9th section of the act of the 19th of January, 1829, in force when the sale was made, declares that a " deed from the Auditor of Public Accounts shall be evidence of the regularity and legality of the sale, until the contrary shall be made to appear; *Provided, however*, that no exceptions shall be taken to any such deed, but such as shall apply to the real merits of the case, and are consistent with a liberal and fair interpretation of the intentions of the Legislature." It has been decided by this Court that an Auditor's deed, executed under the provisions of this act, affords *prima facie* evidence of the regularity and validity of the sale, and of the proceedings anterior thereto, and is sufficient, unconnected with other proof, to entitle a party claiming under it to recover.    Vance *vs.* Schuyler, 1 Gilman, 160 ; Messenger *vs.* Germain, ibid, 631 ; Rhinehart *vs.* Schuyler, 2 Gilman, 473 ; Job *vs.* Tibbetts, 5 Gilman, 376.

According to the principles of the common law, a party claiming title under special proceedings authorized by statute, by which the estate of one man may be divested and transferred to another, is bound to prove that all of the material requisitions of the statute have been complied with, or he acquires no title. Rex *vs.* Croke, 1 Cowper, 15 ; Davidson *vs.* Gill, 1 East, 64 ; Williams *vs.* Peyton's lessee, 4 Wheaton, 77 ; Jackson *vs.* Shep-

hard, 7 Cowen, 88 ; Thatcher *vs.* Powell, 6 Wheaton, 119 ; Atkins *vs.* Kinman, 20 Wendell, 241 ; Smith *vs.* Hileman, 1 Scammon, 323.    And this doctrine has been applied by this Court, with much strictness, to cases of sales of land for the non-payment of taxes.    Garrett *vs.* Wiggins, 1 Scammon, 335 ; Hill *vs.* Leonard, 4 Scammon, 140 ; Fitch *vs.* Pinckard, ibid, 69.

But the statute of 1829, as this Court has held, dispenses with this rule of the common law, and places the burden of proof, in the first instance, on the party controverting the title claimed under the Auditor's deed.    The presumption arises from the deed that all of the prerequisites, necessary to constitute a valid sale of the land, were complied with ; and the party asserting the reverse must overcome this presumption by proof, or the deed will conclude him.

The plaintiffs below made out a *prima facie* case of title to the land, by the production of the Auditor's deed, and the proof that they were the legal representatives of the purchaser at the sale.    They are, therefore, entitled to recover, unless that *prima facie* case was destroyed by the proof introduced by the defendant.    It will be proper to inquire, in the first place, what it would have been necessary for the plaintiffs to establish, had the burden of proof not been changed by statute ; for if the defendant repelled the presumption raised by the statute, it was then incumbent on the plaintiffs, in order to sustain the deed, to have proved all that would be required of them, in the absence of any presumption in favor of the deed.

A reference to some of the provisions of the statutes in force when this sale was made, will become necessary.    The 20th section of the 8th article of the old constitution declares " that the mode of levying a tax shall be by valuation, so that every person shall pay a tax in proportion to the value of the property he or she has in his or her possession."    The 1st section of the act of the 19th of February, 1827, provides that lands " are hereby declared subject to taxation ; and for that purpose, are hereby divided into classes, valued and taxed as follows : lands of the first quality shall compose the first class, shall be valued at four dollars, and taxed at the rate of two cents per acre ; lands of the second quality shall compose the second class, shall be valued at three dollars, and taxed at the rate of one and a half cents per acre ; lands of the third quality shall compose the

third class, shall be valued at two dollars, and taxed at the rate of one cent per acre." The 2d section provides that " all non-residents, owning or claiming lands in this state, shall, either by themselves or agents, enter the same in the office of the Auditor of Public Accounts, particularly describing the land, and the class to which each tract belongs, accompanied with an affidavit of such non-resident, or his agent, stating that such list contains a true classification and description of the property therein described, to the best of the deponent's knowledge and belief. Such non-resident shall not be required to list his lands more than once ; but the Auditor shall annually charge the lands described in such list, with the taxes, according to the description contained in the same, until it shall be listed in a different manner. Every non-resident shall pay into the state treasury, on or before the first day of August annually, the tax imposed upon his land by this act." The 3d section makes it the duty of the Auditor, after the 1st day of August, in each year, to make out a transcript from his books of all lands owned by non-residents, on which taxes are due and unpaid, and cause the same, together with a notice of the time and place of sale, to be published in some newspaper printed in the state. The 4th section requires the Auditor to sell the lands thus advertised on the first Monday of January, and convey the same to the purchaser. The 9th section of the act of the 19th of January, 1829, declares the legal effect of the Auditor's deed, as before recited. The 2d section of the act of the 1st of January, 1831, repeals so much of the act of 1827 " as authorized a class of third rate land for taxation ;" and the 3d section requires the Auditor to list lands for taxation, on the failure of the owner so to do.

This Court decided, in the case of Rhinehart *vs.* Schuyler, 2 Gilman, 473, that these revenue laws were constitutional; but the decision was put expressly on the ground that a classification of the lands, in pursuance of their provisions, was a valuation within the true intent and meaning of the constitution. It necessarily follows that the listing, which includes a description and classification of the land, is not only an essential requirement of the statute, but one that cannot be dispensed with without invalidating the statute. In a double sense, it is an indispensable prerequisite: *first,* to satisfy the plain demands of the statute ; and *second,* to give life and energy to the statute

itself. To hold that listing was unnecessary would be to pronounce the revenue laws unconstitutional and void. If they are to have any operation, this fundamental requisition must be observed. On it depends the validity of all of the subsequent proceedings. It is the first and most important step in the proceedings, and the basis of the right to charge the taxes, and sell the land for the non-payment thereof. The Auditor cannot legally charge the taxes, or take any step towards their collection, until the land has been duly listed. The amount of the tax depends on the class to which the land belongs, and that is to be determined by the listing. The listing under these revenue laws, was as essential as if the constitution had in express terms prescribed it as the proper mode of valuing lands for taxation. It could no more be dispensed with than can an assessment under our present revenue system. In every point of view, listing was a necessary prerequisite to a valid sale of the land. It was demanded by the soundest principles of the common law, the plainest dictates of. justice, the positive directions of the statute, and the imperative requirements of the constitution.

But it is said that if listing was indispensable, the state, from 1821 to 1831, was at the mercy of non-residents, and had no power to collect taxes on their lands except with their consent— they alone being authorized and required to list them for taxation. Admit this position to be true, and it does not help the case. If the revenue laws were so defective as to produce such a result, it would not authorize a sale of the lands of non-residents without a previous classification, much less justify a clear departure from the requirements of the constitution. The injunctions of the constitution are not to be disregarded because the Legislature has failed to perform its whole duty. If the question was now directly before us, we should be inclined to decide that, by a fair construction of the revenue laws, the Auditor had authority to list lands for taxation, on the failure of the owner so to do. But for the year in question, he was expressly required to list lands on the default of the owner. We have not the slightest hesitation in holding, that if there was in fact no listing of the land in question, either by the owner or the Auditor, the sale was unauthorized and void, and no title passed to the purchaser.

The question then arises, whether the presumption raised by the deed that the land was duly listed was rebutted by the defendant. The Auditor swears that the diagram accompanying his deposition embraces all of the evidence appearing in the records and files of his office; that the land was listed for taxation for the year 1832, or the four preceding years. This diagram, at most, only shows the amount of taxes charged against the land in each of those years. It fails to show any classification of the land. The foundation of the authority to charge and collect the taxes is wanting. The act of 1831 abolished the third class, and a new listing then became necessary. It did not follow that lands previously included in the second class would, upon a new valuation, continue in the same class. We are at a loss to conceive how a negative could be more clearly proved than was done in this case. The defendant went to the office where the listing was required to be made, and procured all of the evidence there to be found relating to the matter; and that evidence fails wholly to show that there was any listing of the land.

But put the case on the ground that a new classification was not really necessary after the passage of the law of 1831, and that the Auditor might still charge the taxes on a previous listing, and we are clearly satisfied that the presumption was overthrown. A party is not required to make plenary proof of a negative averment. It is enough that he introduces such evidence as, in the absence of all counter testimony, will afford reasonable ground for presuming that the allegation is true; and when this is done, the *onus probandi* will be thrown on his adversary. 1 Greenleaf's Ev., S. 78. The defendant proved that for the year in question, and the four preceding years, there had been no listing of the land; and that nothing appeared in the records and files of the Auditor's office, during those years, in the least indicating any prior listing. This was amply sufficient to destroy the presumption, and transfer the burden of proof to the plaintiffs, and require them to show affirmatively such a listing of the land as authorized the Auditor to charge the taxes, and enforce their collection. This is a much stronger case than that of Calder *vs.* Rutherford, 3 Broderip and Bingham, 302. There the defendant agreed to pay the plaintiff one hundred pounds if he would not consign, for one year, directly or indi-

56

rectly, any repacked herrings to the London market, and, in particular, to the house of J. & A. Millar. In an action to recover the one hundred pounds, the plaintiff proved that he did not consign, during the year, any repacked herrings to the house of J. & A. M. For the defendant it was objected, that the plaintiff's proof was insufficient, and that he should have called his clerk to show that no herrings were consigned to the London market generally. But the Court refused to set aside a verdict for the plaintiff on this testimony, because " some evidence was given in proof of the negative averment, and that threw it on the other party to go farther."

It is insisted that the Auditor was not required to keep books, or preserve the evidence of the listings of land for taxation. The revenue laws did not in express terms require that to be done, but such was the evident intention of the Legislature. It was necessary from the nature of the office, and the character of the duties cast upon the Auditor. The laws recognize the existence of books in the office, and require the performance of duties that render the keeping of them indispensable. It is made the duty of the Auditor to procure abstracts from the several land offices of all lands entered therein; to cause maps to be made of the several counties in which taxable lands are situated; to furnish each county with a book containing a description of every tract of land within the county, designating such as are reserved for school, seminary and saline purposes, and stating, as to each tract entered, the name of the patentee and present owner, and whether belonging to residents or non-residents; to charge taxes annually on the lands owned by non-residents; to make transcripts from his books of the lands to be advertised for sale; to allow redemptions from sales, and file the evidence of the right to redeem; and " the books and records belonging to the office of the Auditor of Public Accounts shall be sufficient evidence to prove the sale of any tract of land for taxes, or the redemption of the same, or the payment of taxes thereon." These references—and many others might be made— clearly show that books were necessary, and that the keeping of them was designed by the Legislature. The listing of land by the owner was required to be made in writing, and verified by affidavit, and it was the duty of the Auditor to preserve the papers as part of the files of his office. When land was classified

by the Auditor, on the default of the owner, he was bound to preserve the evidence of his acts by proper entries in his books. If he neglected his duty in these respects, it might increase the difficulty of proving the listing, but would constitute no legal excuse for omitting to make the proof altogether. It would not relieve the plaintiffs from the necessity of proving the listing in some legitimate way. If the evidence of the listing was not preserved in the records or files of the office, they should be allowed to prove a compliance with the provisions of the statute by the best evidence of which the nature of the case is susceptible.

The presumption that the land had been duly listed for taxation was rebutted by the defendant; and the plaintiffs failing to prove affirmatively a legal listing, they were not entitled to recover. The *pro forma* decision of the Circuit Court was therefore erroneous, and its judgment must be reversed, with costs, and the cause remanded for further proceedings.

*Judgment reversed.*