## GAVIN *v.* SHUMAN.

TAX TITLE.—A party claiming under a tax title must show a substantial compliance with every provision of the law by which the sale was brought about.

SAME.—Each and every step, from the listing of the land for taxation to the consummation of the title by delivery of a deed to the purchaser, is a separate and independent fact, the existence of which is necessary to support the title.

SAME—EFFECT OF DEED.—The provision of the statute, 2 G. & H. sec. 168, page 108, which makes a tax deed conclusive evidence of the facts therein recited, except the fact that the taxes had not been duly paid, is in derogation of common law, and must be strictly construed.

APPEAL from *Decatur* Circuit Court.

HANNA, J.—This case has been here before, 15 Ind. 93. After it was returned, there was a trial, verdict, and judgment for *Shuman*, the defendant, over a motion for a new trial.

The points made now, and urged in the brief of the appellant, arise upon instructions given and refused.

This was a suit by *Gavin* to quiet the title to forty acres

of land of which he averred he was the owner, etc. The action was commenced against the appellee, *Shuman,* and one *Wooldridge; Shuman* appeared, (*Wooldridge* did not appear,) and answered in denial, and under the statute was permitted to prove title in himself, which he did by tracing the same to himself in 1844.

The real question is whether the title passed out of him by virtue of a sale for taxes accrued in 1853 and 1854. It appeared he owned eighty acres of land adjoining this, upon which a tenant resided, he being a non-resident of the said county, and upon which there was, in each of said years, more than enough personal property of said *Shuman* to pay the taxes. It further appeared that he was assessed with and had paid taxes upon one hundred and twenty acres of land; but that this forty-acre tract was not in the description, perhaps by mistake; that point is not clear; but that the same was charged to one *Wooldridge,* who did not reside in said county. It further appears that said forty acres is unimproved, uninclosed woodland; that it was described as the north-east quarter of the south-west quarter of a certain section; and that *Shuman* had a tenant and personal property on the west half of said quarter section which he owned. No personal property was assessed to *Shuman* or *Wooldridge,* so far as appeared by the tax duplicate, nor did the treasurer search for any, nor demand any upon said lands. The assessor's rolls for 1853 and 1854 could not be found, nor the book of the appraiser of real estate in 1851. No evidence was given of their contents other than that of the auditor, who testified that it was his custom to transfer the assess- ment to the duplicate, and that he made out the duplicates for 1853 and 1854.

It is argued that it was the duty of the tax-payer to list his land. That is true, and we know not but that if the appraiser's book could have been produced, it was so listed. But it is further urged that it was his duty to see that it was properly carried on to the duplicate by the auditor,

and that, under the statute, the presumption is it was so
done. It may be answered to this position that at common
law no such presumption was indulged, but a party claiming
under a tax title had to show a substantial compliance with
every provision of the law by which the sale was brought
about. 1 Blackf. 336; 2 *Id.* 421; 4 *Id.* 258; *Id.* 70; *Id.*
494; 5 *Id.* 98; 8 *Id.* 335; 1 Ind. 542; 2 *Id.* 649; 4 *Id.* 132;
11 *Id.* 2; *Jackson* v. *Shepherd,* 7 Cowen, 88; *Harvey* v.
*Mitchell,* 11 Foster, 575; *Pope* v. *Headen,* 5 Ala. 433; 24
*Id.* 508; *Dunn* v. *Gaines,* 1 McLean, 319; 4 *Id.* 138; *Id.*
213; *Jackson* v. *Esty,* 7 Wend. 148; *Beckman* v. *Bigham,*
1 Selden, 366; *Alvord* v. *Collin,* 20 Pickering, 418; *Hinman* v. *Pope,* 1 Gilman, 131; *Early* v. *Doe,* 16 Howard (U.
S.) 610; *Howe* v. *Russel,* 36 Maine, 115; *Moore* v. *Brown,*
11 How. (U. S.) 414; *Blakely* v. *Ferguson,* 3 English, 277;
*Doughty* v. *Hope,* 3 Denio, 595; *Battemore* v. *White,* 2
Gill. & John. 444.

It is said that " each and every step, from the listing of
the land for taxation to the consummation of the title by
delivery of a deed to the purchaser, is a separate and independent fact. All these facts, from the beginning to the
end of the proceeding, must exist; and if any material link
in the chain of title be wanting, the whole falls to the
ground for the want of sufficient authority to support it."
Blackwell on Tax Titles, p. 65. Upon a careful examination
of the above cases, and many more therein cited, it will,
we think, be found that the proposition thus laid down by
this authority is well supported in all substantial particulars. But we are referred to our statute as follows:

"Such conveyance shall be executed by the county auditor under his hand and seal, and the execution thereof
shall be witnessed by the county treasurer, and such deed
shall be conclusive evidence of the truth of all the facts
therein recited, with the exception of the fact that the
payment of the taxes, for which the lands named therein
were sold, had not been made by or on behalf of the proper
owner of such lands in due time and to the proper officer,

of which last-named fact such deed shall be held as *prima facie* evidence and no more."

This statute is clearly in derogation of the common law in regard to the question upon whom the burden of proof rests; for, in sheriff's sales, regular proceedings from the judgment to the sheriff's deed have to be shown by the person claiming under such deed; so under a deed by an attorney or executor or guardian. Certainly the power under which these persons act should not be more strictly pursued, nor their acts subjected to more critical examination, than that of the officers who sell in the collection of taxes "acres for cents."

Then, this statute quoted should be construed strictly. In that view, passing the question of the power of the legislature to make such a deed conclusive evidence, we will examine and compare this statute and the recitals in the deed. We might say that the evidence is in the record, and if, upon an examination thereof, it is clear that the judgment is right upon that evidence, we will not stop to examine the instructions given or refused.

The laws upon the subject of the listing, assessment, and appraisement of property require the performance of several acts in the line of official duty about which no proof was offered, and in reference to which there are no recitals in the deed of the auditor. There is no recital in the deed nor proof offered on the trial in regard to the levy of a county tax, which the law requires the board of county commissioners to fix in *June.* 1 G. & H., p. 68. The statute requires the appraiser of real property to take an official oath; there is no recital nor proof that he did so. *Id.* 85. The auditor is required to make out and deliver, by the 15th day of *October*, a duplicate to the treasurer, and which said treasurer is to receive; there is no recital nor proof upon either of these points. *Id.* 94–97. It is likewise required that the county commissioners, auditor, and assessors shall meet on the first *Monday* of *June,* and form a board of equalization to hear, etc. *Id.*

97.  It is also provided that certain notices shall be by the treasurer published as to the taxes assessed, and the day he will attend in each township, between the 15th day of *October* and the 15th day of *November*.  There is no proof, nor recital, as to the performance of these acts.  *Id.* 99. The treasurer is, in case of non-payment, by the third *Monday* of *March*, to search for and levy upon personal property if any can be found.  *Id.* 97.  It is not shown by evidence or recital that such search was made.  The auditor and treasurer have to attend at the office of the auditor on the third *Monday* in *March*, and the treasurer makes settlement with the auditor for the taxes charged to him.  The auditor takes off the duplicate what is called the delinquent list, describing the property, and noting the reason assigned for such failure to collect.  This has to be signed by the treasurer and sworn to by him.  The auditor records it in his office, and delivers it to the treasurer to be delivered to the auditor of state.  *Id.* 98.  The deed contains no recital covering these acts, nor was there any proof on the points.  Between the 1st and 15th of *November*, the county auditor shall make out and record a list of all lands returned and remaining delinquent, describing the same, etc., and charging the amount, etc., of taxes, and shall certify to the correctness thereof with the date when the same was recorded, and sign the same officially.  *Id.* 104.  About this no proof was offered, nor is there any recital.  It is further enacted that the auditor shall make out and publish a list of said delinquent lands, and shall on or before the day of sale insert, at the foot of such list, on his record a copy of such notice, and certify thereon the manner, the name of the paper in which, and the time it was published.  *Id.* 105.  There was no evidence on the trial, nor recital in the deed, in regard to the recording and certifying to said notice.  Again, it is the duty of the treasurer to commence selling on the day named in the notice, and of the auditor to attend and enter in a book the sale of each piece, its description, and the name of the pur-

chaser, and give a certified copy of such record to the treasurer, who delivers the same to the auditor of state, when, etc. No evidence was given of a discharge of these duties by the officers named, nor is there any recital dispensing with such proof.

It is not necessary for us to decide that a failure upon the part of the plaintiff to prove the performance of any one of these duties would have been fatal to his case. It is enough, in the case at bar, for us to say that certainly the failure of the proper officers, to act as directed in the several instances named, would present such an imperfect record of the chain of proceedings as would be fatal to any attempt under it to confer title upon a purchaser at a sale dependent upon such record. If the record existed, it should, as to these and perhaps other particulars, have been recited, or if not recited, proof made thereof. In the absence of any evidence, under the rules of the common law, or that which by statute supplies its place, we can only conclude that there was such a substantial want of proof as authorized the verdict of the jury and the judgment of the court thereon.

*Per Curiam.*—Judgment affirmed.

*Hord & Ewing,* for appellant.

*Scobey & Pound,* for appellee.