DEQUASIE *v.* HARRIS.

Decided March 27, 1880.

1. A law making a tax-deed *prima facie* evidence of any or all material facts recited in the deed is constitutional; but in construing such a law the courts will confine its operation strictly within the bounds prescribed by the statute.

2. Under chapter one hundred and seventeen of the Acts of 1872-3, if the report of tax-sales recorded in the county court clerk's office fails to show in whose name a particular tract of land was charged for a certain year, and this tract of land is sold for the taxes delinquent for that year only or for that year and other years jointly, the tax-deed executed by the clerk of the county court, though in due form, and though it recites in whose name the tract of land was charged for each year, will be held, when said report is produced, as null and void. The material fact cited in the deed, that it was taxed in the name of a certain named party for such year, while *prima facie* true, may be contradicted by the production of the sheriff's report of sales.

Writ of error to a judgment of the circuit court of the county of Fayette rendered on the 6th day of April, 1878, in an action in said court then pending, wherein Lorenzo Dequasie was plaintiff and Henry J. Harris was defendant, allowed upon the petition of said Dequasie.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the judgment complained of.

44

GREEN, PRESIDENT, furnishes the following statement of the case :

In June, 1874, Lorenzo Dequasie instituted in the circuit court of Fayette county against Henry J. Harris an action of ejectment for two hundred acres of land, on the old State road, the boundaries of which are set forth in the declaration. To this declaration the defendant pleaded not guilty. The cause was tried by a jury on March 30, 1876, and they found a verdict for the defendant. The plaintiff moved the court to grant him a new trial, which the court refused and entered up a judgment for the defendant pursuant to the verdict of the jury, and the plaintiff excepted to this action of the court, and all the evidence offered to the jury was certified by the court. The plaintiff excepted to the admission of certain evidence by the court and to an instruction granted at the instance of the defendant and to the refusal of the court to grant an instruction asked by the plaintiff ; but, as in my view of this case on its merits it is unimportant to consider these exceptions taken during the trial, their character need not be stated. The evidence offered by the plaintiff proves, as it is admitted, his title to the tract of land in controversy, and that the defendant entered upon, and took possession of, the tract of land in 1873. The defendant gave in evidence two deeds, both of which were duly recorded, one of them in these words and figures:

"This indenture made this 16th day of August. A. D., 1873, by G. M. Blume, clerk of the county court of the county of Fayette, in the State of West Virginia, of the first part, and Theophilus Gaines, of the second part :

"Whereas, in pursuance of the statute in such case made and provided, Samuel H. Carrick, sheriff of the said county, did, on the 20th day of May, 1872, that being the first day of the May term of the circuit court for said county in that year, commence to expose *to expose* to public sale at the door of the court house of the said

county, between the hours of ten in the morning and four in the afternoon, the real estate heretofore returned delinquent for the non-payment of the taxes due thereon in the said county of Fayette; and, whereas, at the sale made as aforesaid, on the 21st day of May, 1872, the said sale having been continued in the manner prescribed by law to that day, the said Theophilus Gaines became the purchaser of a tract of land of two hundred acres situate in the said county, which formerly belonged to and was returned delinquent in the name of Lorenzo Dequasie for the non-payment of the taxes due thereon for the years 1869 and 1870, for the sum of $17.20, that being the amount of taxes, interest, damages and commissions due thereon at the time of said sale, including fee for receipts; and, whereas, more than one year has elapsed, since the date of the said sale, and the said real estate not having been redeemed as provided for by law; and, whereas, after the expiration of the said one year, to wit, on the 3d day of June, 1873, the said Theophilus Gaines in the manner prescribed by law caused a report to be made to the clerk of the county court of the said county specifying the metes and bounds of the said tract of land so purchased as aforesaid, and giving such description thereof as is sufficient to identify the same, and there being no valid objection to said report, the same was, on the 11th day of August, 1873, ordered by the said clerk to be recorded in his office, and a record thereof has been made accordingly — to which record now remaining in the office of the clerk of the county court of the said county of Fayette, reference is here had : Now, therefore, this indenture witnesseth, that for and in consideration of the premises, the party of the first part has bargained and sold, and by these presents doth grant, bargain, sell and convey unto the party of the second part, his heirs and assigns forever, the real estate aforesaid, situate in the county aforesaid, on O. S. road, bounded as follows, to wit:  Beginning at two gums and dogwood, corner to Vardiman Dequasie; thence north

three hundred and ten poles to a hickory, gum and two dogwoods; thence, leaving V. Dequasie, south eighty-six west eighty poles to a chesnut oak and knob; thence south twenty-two west two hundred and seventy-eight poles to a black oak on the north side of a ridge, and thence south seventy-five and three-fourths east one hundred and ninety poles to the beginning—containing two hundred acres, more or less, to have and to hold the said real estate, with its premises and appurtenances, unto the said Theophilus Gaines, his heirs or assigns forever.

"Witness the following signatures and seals:

"G. M. BLUME, [Seal.]

"*Clerk of the County Court of Fayette County,* "*West Virginia.*"

The other is a deed conveying this land from Theophilus Gaines to the defendant, Henry J. Harris, dated December 25, 1873. The tract of land purporting to be conveyed by these deeds is the tract in controversy.

The defendant also gave in evidence a certified copy from the office of the Auditor of the State of West Virginia of the sheriff's report of the sale of land for delinquent taxes, made in the county of Fayette in May, 1872; and the plaintiff then offered in evidence the report of sales made in May, 1872, which was returned to the recorder of Fayette county by its sheriff, and which was duly recorded in the said recorder's office. The two lists on the next pages show the lists of the land sold in 1872 as delinquent in Fayette county, and how and when sold, as appearing in the Auditor's office and in the recorder's office of Fayette county.

1880
Special Term.

Dequasie
v.
Harris.

FROM AUDITOR'S OFFICE.

List of Real Estate within the county of Fayette sold in the Month of May, 1872, and on the 20th and 21st of of said Month, for the non-payment of Taxes thereon for the years 1865, 1866, 1867, 1868, 1869 and 1870; the said sale made on the 21st day of May, 1872, being adjourned sale from the 20th day of May, 1872.

| No. | Name of Person charged with taxes. | Quantity of land charged. | Local description of Land. | For what year sold. | State tax and int'st. | County tax and int'st. | Township tax and interest. | Whole amount tax and interest. | Total tax, interest and 15 per cent damages. | Total of all taxes, interest and damages. | Total of all taxes, interest, damages and expenses of sale. | Date of sale. | Name of Purchaser. | Amount of purchase-money paid, including interest, damages, commissions, and the fee for receipt. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Dequasie, Lorenzo | 200 A. | O. S. Road. | 1869 1870 | 2 95 2 20 | 3 6 4 04 50 1 5 3 60 25 | | 14 08 | 16 15 | 16 15 | 16 95 | May 21st | Theophilus Gaines. | $17 20 |

1880
Special Term.

Dequasie
v.
Harris.

FROM RECORDER'S OFFICE.

*List of Real Estate within the county of Fayette, sold in the Month of May, 1872, for the non-payment of Taxes thereon for the years 1865, 1866, 1867, 1868, 1869 and 1870, and purchased by the persons whose names are annexed as purchasers to each tract respectively, to which Sheriff's receipt in each case to be added.*

| Name of person charged with taxes. | Quantity of land sold. | Local description of land. | State, county and township taxes for 1869 and 1870. Interest from January 20th of the year following the year taxed. | | | | | | Name of purchaser. |
|---|---|---|---|---|---|---|---|---|---|
| | | | For what year sold. | State tax and inter-est. | County tax and in-terest. | Township tax and interest. | Whole amount tax and interest. | Total tax, interest and 15 per cent damages. | |
| Dequasie, Lorenzo. Same tract. | 200 A | O. S. Road. | 1869 1870 | 295 36 220 15 | 404 50 360 25 | | 14 08 | 16 95 | Theophilus Gaines. |

From the judgment of the circuit court the plaintiff obtained a writ of error to this Court.

*William H. Hogeman*, for plaintiff in error, relied on the following authorities :

18 Vt. 470; 20 Vt. 13; Acts 1873, ch. 117, §25; Code 1868, ch. 30, §25.

*Samuel Price and A. C. Snyder*, for defendant in error, cited the following authorities :

3 Cranch 180; 1 Gr. Ev. §277 note ; 17 Wall. 123; Acts 1872–3, ch. 117, §29; Code 1868, ch. 31, §29; 7 W. Va. 135, 147; 10 Gratt. 421.

GREEN, PRESIDENT, delivered the opinion of the Court:

The real question involved in controversy in this case is, whether the tax-deed of the clerk above copied operated to convey the title of the plaintiff to the tract of land in controversy. If it did, the judgment of the court was right; if it did not, this judgment was erroneous, and a new trial should be awarded the plaintiff. The question was discussed at the bar whether in this case the twenty-fifth section of chapter one hundred and seventeen of the Acts of 1872–3, passed April 9, 1873, has any application to this case. or whether it is controlled by the twenty-fifth section of chapter thirty of Code of West Virginia ; and also whether these sections of the law are constitutional. But as the portions of these sections which agree have not been complied with, so as to render this tax-deed valid, in my judgment it is unnecessary in this case to determine, which of these sections control in this case, or. whether any portion of either of them be unconstitutional. These were the questions on which the court gave instructions, which were the subject of controversy in part in the court below. But as these questions are in my judgment immaterial in this case, I waive the consideration of the instructions

granted and refused, and shall confine myself to the controlling question of controversy in this case: Is the tax-deed relied on by the defendant valid?

In considering this question we need not determine whether we should confine our attention to the report of the sales for delinquent taxes as recorded in the recorder's office, or whether we may look also to the report of sales as recorded in the Auditor's office; for both these reports agree in this respect: that the name of the person in whose name this tract of land was taxed for the year 1870, does not appear. And in my judgment this defect alone is sufficient to vitiate the sale of this tract of land, if sold for the taxes of 1870, either in whole or in part, and the deed on its face shows, that the land was sold in part for the delinquent taxes of 1870.

The twenty-ninth section of chapter one hundred and seventeen of Acts of 1872–3, provided: "In all cases, in which a question shall arise as to any such sale or deed or the effect thereof, such deed shall be *prima facie* evidence against the owner or owners, legal or equitable, of the real estate at the time it was sold, his or their heirs or assignees, that the person named in the deed as recorder or clerk of the county court was such, that the sheriff or other officer who made the sale was such sheriff or officer as stated in such deed, that the material facts therein stated are true, and that such estate as is mentioned in the twenty-fifth section of this chapter vested in the grantee in the deed." Appropriating the language of Judge Allen in the case of *Flanagan* v. *Grimmet et al.*, 10 Gratt. 425, in reference to a similar act of the Legislature of Virginia passed February 9, 1814, I may well say, that "when this act was enacted, the Legislature was fully aware of the construction which had uniformally been put on laws of this description (tax-sale laws). Few principles of law were more firmly settled, and, from their influence on the transactions of others, more widely known than, that when the validity of a deed depends upon acts in *pais*, the party claiming un-

der it is bound to prove the performance of the act; that in the case of a naked power not coupled with an interest, the law requires that every prerequisite to the exercise of such power must show that the law has been strictly complied with; that the recitals in the deed of the officer selling for taxes were not even *prima facie* evidence of the regularity of his proceedings; and that these facts must be proved by evidence *aliunde.* *Yancey* v. *Hopkins,* 1 Munf. 419; *Christy* v. *Minor,* 4 Munf. 431; *Nallie* v. *Fenwick,* 4 Rand. 585; *Stead's ex'rs* v. *Course,* 4 Cranch 402; *Parker* v. *Rule's lessee,* 9 Cranch 64; *Williams* v. *Peyton's lessee,* 4 Wheat. 77; *Allen* v. *Smith,* 1 Leigh 231; *Ronkendorf* v. *Taylor's lessee,* 4 Pet. 349.

"As the various directions contained in laws for the sale for taxes were frequently disregarded by officers charged with the duty of making such sales; and, whether complied with or not by the officers, purchasers had but seldom preserved the evidence of such compliance, even if, considering the number of such sales, it would have been practicable for each purchaser to procure and preserve that evidence, it followed that but few titles claimed under such sales were sustained by the courts. Confidence in such titles was greatly impaired and almost destroyed. It was manifest, that, unless some assurance could be held out to purchasers at sales for taxes that a good title could be acquired, the commonwealth would continue to meet with embarrassments for want of an adequate mode for the subjection of land to the payment of taxes; and hence the passage of this and similar acts."

That the Legislature has the constitutional power to change the the common law rule of evidence and to declare, that the tax-deed itself shall be received in all courts as *prima facie* evidence that certain or all the prerequsites of the law have been complied with, and thus shift the *onus probandi* from the purchaser to the owner, is clear and unquestionable, and has been almost universally admitted. See *Pellon* v. *Roberts,* 13 How.

(U. S.) 472; *Steadman* v. *Planters Bank*, 2 Eng. 426, 428; *Morton* v. *Reeds*, 6 Mo. 74; *Flanagan* v. *Grimmet*, 10 Gratt. 421. But such legislative enactments, changing the law of evidence and shifting the *onus probandi* from the purchaser to the owner, has been construed strictly by the courts. And the *onus probandi* will be regarded as shifted only to the extent that the words of the statute require it to be shifted.. See *Moulton* v. *Blaisdell*, 24 Me. 283; *Gavin* v. *Shuman*, 23 Ind. 32; *Stierlein* v. *Daly*, 37 Mo. 483; *Garrett* v. *Wiggins*, 1 Scam. 335; *Shoalwater* v. *Armstrong*, 9 Humph. 217; *Parker* v. *Smith*, 4 Blackf. 70; *Carlisle* v. *Longworth*, 5 Ohio 363. The nineteenth section of chapter one hundred and seventeen of Acts of 1872–3, page three hundred and eighteen, expressly provides that in the tax-deed executed by the clerk of the county court "shall be cited all the material circumstances appearing in his office in relation to the sale;" but it does not require that these material circumstances cited in the deed shall on its face be stated to appear in the clerk's office.

Syllabus 2.

In this case the tax-deed is made in the form prescribed by the fifty-eighth section of chapter one hundred and seventeen of Acts 1872–3, page three hundred and forty; and it is therefore valid in its form according to this section. Under the twenty-ninth section the deed itself in this case would be *prima facie* evidence of all the material facts cited in this deed. This deed is therefore valid and operative, unless this *prima facie* evidence of its validity is rebutted by showing that the material facts recited in it are contradicted by the material facts with relation to the sale appearing in the clerk's office which ought by the law to be cited in the deed. See section nineteen of said act, page three hundred and eighteen. By sections twelve, ten and fourteen of said act, pages three hundred and thirteen and three hundred and fourteen, the sheriff is required to make a report of each tract of land sold, which shall show among other things for what year or years of delinquent taxes the land was

sold and the name of the person who is charged each year with such taxes; and a copy of this report is required to be recorded in the office of the clerk of the county court, the original to be sent to the Auditor. These facts, which are obviously material facts, must appear in the sheriff's report; and therefore must appear in the clerk's office of the county court where it is recorded. This report was in this case produced in evidence, one copy from the Auditor's office and one from the county clerk's office. In each it appears that this tract of land was sold as delinquent for the aggregate taxes of 1869 and 1870. While the report does show that the taxes for this tract of land were charged for the year 1869 to Lorenzo Dequasie, it does not show, as the law required, in whose name it was taxed for the year 1870. The tax-deed recites that this tract of land "was returned delinquent in the name of Lorenzo Dequasie for the non-payment of the taxes for the years 1869 and 1870." This material fact is then not sustained by the facts appearing in the office of the county clerk in the recorded report of the sheriff of the sale, as it shows that it was returned delinquent in the name of Lorenzo Dequasie only for the year 1869, and not for the years 1869 and 1870.

The report of sale, it is however insisted by counsel of defendant in error, does not contradict the facts cited in the tax-deed; but they are entirely consistent with each other. The tract may have been charged in the name of Lorenzo Dequasie for the year 1870, as stated in the deed, as the report of sale does not state that it was charged in the name of some other person for that year. It simply fails to state, as it should have done, in whose name the tract was charged for the year 1870. In such a case however the maxim *quod non apparet non est*, that which does not appear must be taken in law as if it were not, must be applied; and a material fact required by the law to appear in the report of the sale made by the sheriff, if it does not appear, must necessarily be re-

garded as not existing. If it were otherwise, if a person owned a tract of land which was not charged in any given year on the commissioners' books, any other person might acquire an indisputable title to this tract of land by simply procuring the clerk of the county to sign a tax-deed setting out falsely that the tract had been returned delinquent for that year in the name of the owner, and had been sold and purchased by such other person. These facts cited in the deed must be *prima facie* correct ; and they could not, according to the argument of the counsel of defendant in error, be ever contradicted, as the report of sales would not directly contradict them, but simply show nothing with reference to the sale of this particular tract. The *prima facie* proof of all the material facts which are required by the law to appear of record in the clerk's office of the county court in the sheriff's report of sales, and which are cited in the deed in order that it may be valid, is rebutted, when this report is produced and it thereby appears that any of these material facts do not appear in this report. These facts in the nature of the case can only be contradicted in this manner.

This conclusion is supported by the authorities. Thus in Illinois the act of January 19, 1829, provides, that a "deed from the Auditor of public accounts shall be evidence of the regularity and legality of the sale, until the contrary shall be made to appear ;· *Provided however*, that no exceptions shall be taken to any such deed, but such as shall apply to the real merits of the case and are consistent with a liberal and fair interpretation of the intentions of the Legislature." Under this statute the courts decided : "The presumption arises from the deed that all the prerequisites, necessary to constitue a valid sale of land, were complied with ; and the party asserting the reverse must overcome this presumption by proof, or the deed will conclude him. When the claimant under the tax-deed brings an action of ejectment, he makes a *prima facie* case of title to the land by the production

of the Auditor's deed, unless this *prima facie* case is destroyed by proof introduced by the defendant." See 11 Ill. 438. Yet in the case of *Graves* v. *Bruen et al.*, 11 Ill. 431, in which the law as above stated was laid down, it appeared from the production of the Auditor's books for several successive years, that the tract of land did not seem to have been listed or charged ; and the court held, that even if the law required the plaintiff to list his own lands, and had provided no mode of listing them, if he failed, still, "if in fact there was no listing by the owner, the sale was unauthorized and void, and no title could pass to the purchaser," page 440. As the court on a review of their laws reach the conclusion, that their laws required books to be kept in the Auditor's office showing the listing of the lands, the mere failure of the books of the Auditor's office to show that the land was listed would itself rebut the *prima facie* evidence in favor of the plaintiff arising from the production of the Auditor's deed. See page 442. The court on page 441 say : "A party is not required to make plenary proof of a negative averment. It is enough, if he introduces such evidence as, in the absence of counter-testimony, will afford reasonable grounds for presuming that the allegation is true; and when this is done, the *onus probandi* is thrown on his adversary." Hence they conclude, that "even if the Auditor might charge the taxes on a previous listing, yet, though the Auditor had made a deed which was *prima facie* evidence that all the prerequisites to a valid deed and sale had been complied with, still this was sufficiently rebutted, when it was proven by the defendant, that the land was not listed for that year or four preceding years, and that nothing appeared in the records and files of the Auditor's office during those years in the least indicating a previous listing." The court say : "This was amply sufficient to destroy the presumption, and transfer the burden of proof to the plaintiffs, and require them to show affirmatively such a listing as authorized the Auditor to charge the taxes and enforce their collection," page 441.

The proof in the above case offered to rebut the deed was merely negative, and did not contradict the facts presumed to be *prima facie* true from the production, but simply rendered it probable that the land had not been listed. But in the case before us as our law requires the land to be charged to the owner on the books the very year for which it is sold as delinquent, when the report of such is produced, and from this report it does not appear to be charged, the inference, that the allegation that it was so charged made in the deed is not true, is, if not inevitable, at least far stronger than in this Illinois case.

So in *Turney* v. *Yeoman et al.*, 16 Ohio 24, it was held, that though the statute of that State, like ours, makes the tax-deed *prima facie* evidence of the facts therein stated; yet a description of a tract of land in the deed as an undivided third part of a thousand acres is contradicted by the listing of this land as three hundred and thirty three acres in an original survey of one thousand acres. The court say: "Now it might be contended, with much reason and force, that, it being the duty of the owner to list his land for taxation, he ought not to be permitted to question a tax-deed by showing that he failed to perform his duty by giving a wrong or too vague description. It would have been well in the first instance, perhaps, to have held this doctrine, but the opposite principle has always been observed and been too frequently asserted to be disturbed, except by legislative interference, which would give it a prospective operation." The constitutional right of the legislature to so interfere seems to me to be very questionable.

In the case before us, I presume, the defect in the listing which appear in the sheriff's report of sales was in no manner the fault of the owner of the tract of land.

In *Sibley* v. *Smith et al.*, 2 Gibbs (Mich.) 497, the court speaking of the character of the evidence necessary to rebut the *prima facie* made by this statute by the production by the plaintiff of the tax-deed, says: "The defend-

1880
Speci'l Term.

Dequasie
v.
Harris.

ant is not required to make plenary proof of a negative averment; it is enough that he introduces such evidence as, in the absence of all counter evidence, affords reasonble grounds for presuming his allegation true; and when this is done, the *onus probandi* will be thrown on his adversary (1 Gree. Ev. § 78 ; 11 Ill. R., *Graves* v. *Bruen,* 441)."

In *Fitch* v. *Casey,* 9 Green (2 Iowa) 305, only one fifth of a lot was assessed, but the collector sold two fifths. On this being proven the deed was held invalid, though in that State the tax-deed is *prima facie* evidence that the statute authorizing the sale has been complied with.

The twenty-fifth section of chapter thirty one of the Code of West Virginia, page one hundred and ninety four, declares the tax-deed valid, "notwithstanding any irregularity in the proceedings under which the said grantee claims title, unless such irregularity appears on the face of the proceedings of record in the office of the recorder and be such as materially to prejudice the rights of the owner whose real estate is sold." Chapter one hundred and seventeen of the Acts of 1872–73, section twenty five, declares the tax-deed valid " notwithstanding any irregularity in the proceedings under which the said grantee claims title, unless such irregularity appears on the face of the proceedings of record in the office of the clerk of the county court, or be such as materially to prejudice the rights of the owner whose real estate is sold, *and it be clearly proven to the court or jury that such diligence has been exercised by the party in whose name it was sold, that but for such irregularity the said party would have redeemed the same."*

It is in my judgment immaterial, whether these provisions be constitutional or not, or whether in this case in this respect the Code, or the Acts of 1872-3, is to control. The court below instructed the jury that the act of 1872–3, controlled in this case, and not the provisions in the Code. But it is immaterial whether the act of 1872-3,

is in this respect constitutional or not, or whether it, or the provision in the Code, is applicable to this case. The failure of the report of the sheriff to show in whose name the land in controversy was taxed for the year 1870 for the delinquency to pay the taxes of that year being in part the basis of the sale, was not a mere irregularity which might be cured either by this provision in the Code, or in the Acts of 1872-3, but it was an omission in a material and essential particular, which could not be cured by the recitals in the deed, and which necessarily vitiated the tax-deed.

The circuit court therefore erred in refusing to set aside the verdict of the jury, and in entering up a judgment for the defendant; the verdict of the jury being necessarily based on the assumed validity of this tax-deed.

The judgment of the circuit court in favor of the defendant, of April 6, 1878, must be set aside, reversed and annulled; and the plaintiff in error must recover of the defendant in error his costs in this Court expended; and this Court proceeding to render such a judgment as the circuit court ought to have rendered doth sustain the motion of the plantiff for a new trial, and doth set aside the verdict of the jury, and award a new trial, the costs of the former trial to abide the result of this suit, and doth remand this case to the circuit court of Fayette county, to be further proceeded with according to the principles laid down in this opinion, and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED, CASE REMANDED.