WILLIAM BENNETT, *et al., vs.* J. M. McWHORTER, Auditor.

January Term, 1868.

1. P., sheriff of R. county, failed to pay the taxes and licenses assessed for the years 1861–62, into the State treasury by the 15th day of March, 1863, the latest period allowed by law for the payment of any part thereof. By law he might distrain for said taxes and licenses until the 1st day of July, 1863–64 respectively. The legislature by an act passed March 1st, 1865, extended the time for the collection and payment into the treasury of the taxes and licenses of R. county remaining unpaid for the years 1861–62, until the 1st day of December, 1865, and authorized the said P. to distrain for the same until that time. HELD:

    1. That the liability of P. and his sureties for the whole and every part of the taxes and licenses became fixed at the time of the default on the 15th day of March, 1863, and that they could be proceeded against after that time.

    2. That the act of March 1st, 1865, extending the time, did not release the sureties of their obligations as bondsmen of P. That the act did not intend to release them, but to indemnify and save them harmless to the extent of such amounts as might be made by distraint.

2. It is a well settled rule of construction that, the State is not to be presumed to have discharged the public rights without express declarations or manifest intention to that effect.

*Jesse F. Phares* was sheriff of *Randolph* county in 1861–62. Some of his sureties gave him notice that they would be liable no longer on his bond of office, whereupon he filed a new bond on the 28th day of July, 1862, with *William Bennett, George W. Yokum, Squire B. Daniels, Benjamin I. Phares, Benjamin Phares, Adam Crawford* and *William C. Chenowith,* as his sureties. In consequence of the sheriff not paying into the State treasury the taxes and licenses assessed in the

*Absent from illness.

county of *Randolph* for the years 1861–62, the auditor of the State, *J. M. Mc Whorter, Esq.*, gave notice, as provided for by law, in the circuit court of Ohio county, to the sheriff and his sureties that on the 10th day of October, 1866, he would move for a judgment against them for 6,793 dollars and 1 cent taxes for the year 1861, and for 6,053 dollars and 62 cents taxes and 220 dollars and 91 cents licenses for the year 1862, in the name of the commonwealth of Virginia for the use of West Virginia. On the 20th day of December, 1866, (the motion having been postponed,) the defendants, *Bennett, Yokum, Phares'* and *Crawford*, obtained an order of injunction from the judge of the circuit court of Ohio county to restrain the plaintiff in the motions from prosecuting them. They alleged in their bill, in addition to what is in substance heretofore stated, that the legislature of *West Virginia* passed an act on the 1st of March, 1865, "allowing further time for the collection of the taxes of 1861–62 of the county of *Randolph*," to the sheriff, *Jesse F. Phares*, to-wit: allowing him until the 31st day of December, 1865, to collect and pay into the treasury the taxes and licenses for 1861–62 remaining unpaid; and that the said act was passed without the assent of the sureties' complainant, and was contrary to the effect of their said bond and to the manifest wrong and injury of the complainants; they asked that the auditor and all other agents of the State be prohibited from prosecuting the motions for judgments before mentioned, and that they be forever discharged from all liability for the taxes and licenses so charged to the sheriff.

At the May term, 1867, the auditor demurred to the bill and the complainants joined therein; whereupon the court sustained the demurrer and dismissed the bill.

The complainants prayed an appeal to this court which was allowed.

*Lamb & Paull* for appellants.
*Attorney General Melvin* for appellee.

BROWN, President.    By the code of 1860, chapter 36, section 1, the taxes assessed in any county were to be collected by the sheriff of the county.    By section 2, he was to commence the collection yearly on the 1st day of July, and might after such time make distress.    By section 4, no distress could be made for taxes after the sheriff had had more than two years to collect the same.    By section 21, the taxes so assessed and collected were to be paid into the treasury, as follows: three-fourths on or before the 15th day of December of the year in which the same were assessed, and the remaining fourth on or before the 15th day of March next thereafter, except, &c.

Such was the law when the appellants and others became sureties for Jesse F. Phares, sheriff of Randolph county, in his official bond in the penalty of 30,000 dollars, conditioned that the said Jesse F. Phares should faithfully discharge the duties of his office as sheriff of said county, then to be void, else to remain in full force and virtue.

The taxed assessed in the county of Randolph for the year 1861, amounted to 6,793 dollars and 1 cent, three-fourths of which should have been paid into the treasury on or before the 15th day of December of that year, and the remaining fourth on or before the 15th day of March next following; but it was not done and therein the sheriff failed to discharge the duty of his office, and made default.    On such default he and his sureties became liable to the State on the bond, for the amounts respectively at the respective dates when due.    And the same rule is applicable to the taxes of 1862, which amounted to 6,053 dollars and 62 cents; so that all of said taxes were due and unpaid on the 15th of March, 1863, the latest period for the payment of any part thereof, after which the liability of the sheriff and his sureties on the bond became fixed as to said taxes and to every part thereof, and the right of action was complete by the State to sue on the bond for the penalty to be discharged by the payment of the taxes and damages delinquent.    It must be borne in mind, nevertheless, that by the 4th section, the sheriff had

two years in which to distrain for the taxes from the time
he was to commence collecting, which was the 1st day of
July of 1861 and 1862, respectively, so that up to the 1st
days of July, 1863 and 1864, respectively, he might distrain
for the said taxes of 1861 and 1862, respectively, and thus
indemnify himself and sureties as far as possible for the lia-
bilities incurred on the bond for his defaults. And though
this right to distrain after default was allowed, yet it did not
discharge nor in any way affect the liability of the sheriff
and his sureties on the bond for the default that had ac-
crued, neither prevent the State from pursuing her reme-
dies on the bond as soon as default was made. This right
of the sheriff of Randolph to distrain terminated at the
latest period for taxes of 1862, on the 1st day of July, 1864.
By the act of March 1st, 1865, the said sheriff, Jesse F.
Phares, was allowed until the 31st day of December, 1865,
to collect and pay into the treasury of the State all taxes
and licenses assessed in said county and remaining unpaid
for the years 1861 and 1862, and he was authorized to dis-
train for the same for the time aforesaid.

Now the important question is, does this act, in extending
indulgence to the sheriff and perhaps to his sureties, tie the
hand and stay proceedings by the State and her officers in
prosecuting her claim on the sheriff's bond. If so, then
consequences may follow which may not have been antici-
pated as intended.

This statute gives to the sheriff the right and authority to
collect and distrain for the taxes of 1861–62, from March 1st,
1865, to the 31st of December, of that year. Here was an
important privilege conferred upon the sheriff and his se-
curities which he did not possess at the date of the act, a
privilege which had existed before the act and after the
sheriff's default and liability; but which had expired as we
have before seen on the 1st day of March, 1863–4, respec-
tively. The liability of the sheriff and his securities on his
bond was fixed and certain when the act was passed.

By authorizing the sheriff to collect and distrain for the
taxes then uncollected, in the hands of the people, was pro-

viding by law a means to pay the debt due on the bond and discharge the liabilities of the sureties therein *pro tanto.* But the authority and provision would have been unavailing without the time necessary to do it in. But the important question for consideration is not whether the act gave further time to collect and distrain, but whether in doing that it stayed the hand of the State and auditor and prevented a proceeding by suit or notice on the bond for the default and liability antecedent to the act. There is no question that after the liability of the parties became fully and finally fixed by the default on the 1st days of March, 1862-3, respectively, for the taxes of 1861-2, and the right of the State or auditor to sue or notice on the bond complete, yet notwithstanding, the sheriff had the right and authority to collect and distrain for those same taxes until July 1st, 1863-4, respectively, a period of about eighteen months after his liability on the bond had accrued; nor did this right to the sheriff defeat or affect his liability on the bond, or the right of the auditor to proceed thereon while the sheriff was proceeding by distress. And it is not perceived how the act of March 1st, 1865, in extending the time and privilege of the sheriff to collect and distrain could any more operate to restrain the auditor from proceeding on the bond than the statute did under which the bond was given.

But it is said that the act of March 1st also allows the sheriff until the 31st of December, 1865, in addition to collecting and distraining, to pay into the treasury the said taxes; and so it says, but the sheriff had just as much right to pay the amount of those taxes in discharge of his bond before as after the passage of that act, and still has since the expiration of its period of limitation, and so far, therefore, as the permission to pay was concerned, the act only repeated what could as well have been done without it. The permission to pay into the treasury until actually made and the liability discharged, no more prevented the auditor from proceeding by suit on the bond in the one case than in the other.

Nothing can be plainer than that it was never the intention of the legislature in passing the act, in question, to tie the hands of the auditor, or discharge the sureties on the sheriff's bond, but simply to secure the payment of the taxes and save the sheriff and his sureties harmless as far as possible by making the tax-payers discharge the obligation *pro tanto*. The act does not say that the auditor shall be stayed from proceeding on the bond, nor is such a prohibition at all necessary to make effective the privilege granted. It is also a settled rule of construction that the State is not to be presumed to have discharged the public rights without express declaration or manifest intention to that effect.

From the foregoing views, I conclude that the act of March 1st, 1865, did not stay the auditor from proceeding by suit or notice on the bond, and that it had, therefore, no effect on the obligation of the securities except to indemnify them to the extent of the taxes that might be collected by distress; that could not have been done without the act.

I think, therefore, that there was no error in the decree of the circuit court sustaining the demurrer and dismissing the bill, and that the same should be affirmed, with costs and damages to the appellee.

Judge Maxwell concurred.

DECREE AFFIRMED.