# WHEELING.

## SIMPSON *et al. v.* EDMISTON *et al.*

### Submitted January 11, 1884—Decided March 29, 1884.

1. A plea in abatement to the jurisdiction of the court can not be filed after a conditional judgment or decree *nisi*. (p. 677.)

2. A joint plea in abatement by two defendants, which is bad as to one, is necessarily bad as to the other. (p. 678.)

3. A court of equity has jurisdiction to set aside an illegal or void tax deed. (p. 678.)

4. Where a deed or other written instrument is assailed and claimed to be invalid by a plaintiff, and such deed or instrument is exhibited with and made part of his bill, and it appears to be invalid upon its face, the court will not decline to declare it void and set it aside, simply because the plaintiff did not in his bill specify the particular grounds on which the court regards it void. (p. 678.)

5. If the clerk of the county court omits to note in his office the day on which the sheriff returns to his office the list of lands sold for delinquent taxes, such omission will render any deed made to the purchaser of land so sold and returned invalid. (p. 679.)

6. Where the proceedings appearing in the office of the clerk of the county court, upon which a tax-sale and deed are founded, show fatal defects, the grantee in such deed will not be regarded as a *bona fide* purchaser; nor will his vendee be treated as a *bona fide* purchaser; because a purchaser of land for taxes and all his vendees are deemed to have notice of whatever defects the records in the county clerk's office, on which his deed is founded, disclose. (p. 680.)

7. Where two or more persons claim the same land under adverse titles or color of title, if either desires to protect his title from forfeiture he must enter the land on the assessor's book in his name and pay the taxes thereon. The payment of taxes on such land by an adverse claimant will not protect other titles from forfeiture. Each claimant must enter the land and pay the taxes on it in his own name. (p. 683.)

8. A purchaser of land sold for delinquent taxes, after he acquires a deed therefor, will be deemed as holding adversely to the person in whose name the land was sold, and if such person denies the validity of the tax-deed and still claims the land he must keep the land on the assessor's book in his name and pay the taxes thereon. The payment of the taxes on such land by the tax-

purchaser in his own name will not inure to the benefit of the former owner, and, therefore, such former owner will not be required to reimburse such purchaser for taxes so paid in his name by the court which declares void and sets aside such tax deed. (p. 684.)

A statement of the facts will be found in the opinion of the Court.

*Lynn & Hamilton* for appellant.

*W. S. Sands* for appellee.

SNYDER, JUDGE:

This suit was brought in the circuit court of Calhoun county by J. H. Simpson and J. G. McCluer against Andrew Edmiston and William W. Watson to set aside certain deeds founded on a sale of land for delinquent taxes. The original bill is not copied into the transcript before us, but it appears from the process that the suit was commenced, February 5, 1881, against the defendant, Edmiston, alone and that process was served on him by the sheriff of Ohio county, February 16, 1881.

At the June rules, 1881, the plaintiffs filed in said court an amended bill against said Edmiston and William W. Watson in which they aver that they are the owners of one thousand acres of land lying in Washington district in said Calhoun county, which was conveyed to the plaintiff, Simpson, by John A. Steel by deed dated March 7, 1874; that Simpson on March 17, 1874, conveyed an undivided two thirds thereof to one W. H. Young and that C. R. Smith, the assignee in bankruptcy of Young, by deed dated March 24, 1876, conveyed the two thirds so conveyed to Young to the plaintiff, McCluer; that on October 13, 1877, the clerk of the county court of said county by a pretended tax-deed of that date attempted to convey the whole of said land to the defendant, Edmiston; and that, on February 6, 1880, Edmiston conveyed all his title and interest in the land to the defendant, Watson.

The plaintiffs further aver that said tax-title is wholly invalid and operates as a cloud upon their title, and pray that said tax-deed and also the deed from Edmiston to Watson be

declared void and the defendants required to execute to them a release of their claim to said land, and for general relief.

The defendants demurred generally to the plaintiffs' bill, and also filed separate answers thereto. They deny the invalidity of said tax-deed. As to the coveyances from " Simpson to Young and from C. R. Smith, assignee in bankruptcy of said Young to the plaintiff, McCluer," the defendants say, they know nothing and they say they " neither admit nor deny the allegations of the bill touching the same, being advised that it is immaterial to their interest in this cause whether the same be true or false, but if the same be deemed material by the court they call for full proof of same."

The defendant, Watson, avers that he is an innocent purchaser for a valuable consideration, and that he has since his purchase expended a large sum, " to-wit, the sum of one thousand dollars in permanent and lasting improvements upon said land;" and that he has paid taxes thereon which he asks may be refunded to him in the event his title is held invalid. To the answers the plaintiffs replied generally. ·

At the August rules, 1881, to which the process on the amended bill was made returnable, the defendants filed in the clerk's office a joint plea in abatement to the jurisdiction of the court, to the effect that neither of them were nor ever had been residents of Calhoun county. The plaintiffs on October 26, 1882, moved the court to strike this plea from the cause.

The cause was finally heard on June 20, 1883, when the court struck defendants' plea from the record, overruled the demurrer and decreed that the said tax-deed and the deed from Edmiston to Watson be annulled and set aside and ordered the defendant, Watson, to make to the plaintiffs a deed releasing all his interest in said land and that the defendants pay the costs of the suit. From this decree the defendant, Watson, obtained an appeal with *supersedeas.*

The first error assigned by the appellant is that the court improperly struck from the record the plea in abatement.

Our Code provides that: " Where the declaration or bill shows on its face proper matter for the jurisdiction of the court, no exception for want of such jurisdiction shall be allowed, unless it be taken by plea in abatement; and the plea

shall not be received after the defendant has pleaded in bar, answered to the declaration or bill, nor after rule to plead, or a conditional judgment or decree *nisi*"—Code, ch. 125 § 16.

The summons on the original bill against Edmiston was returnable to March rules, 1881, and was served on him February 16, 1881, and, therefore, as to him there was a decree *nisi* at the March rules, 1881. After that time he could not under the statute plead in abatement to the jurisdiction of the court. The plea in this case was not filed until the August rules, 1881. As to Edmiston the plea was clearly filed too late and was properly rejected as to him—*Carey* v. *Burruss*, 20 W. Va. 570; *Delaplain* v. *Armstrong*, 21 *Id.* 211, 219.

The plea is joint by both defendants and being bad as to Edmiston it is necessarily bad as to Watson. It could not be good as to one and bad as to the other. It was, therefore, properly rejected as to both defendants.

The second assignment is, that the court erred in overruling the demurrer to the bill. This Court has repeatedly held and recognized that a court of equity has jurisdiction to set aside an illegal tax deed—*Forqueran* v. *Donnally*, 7 W. Va. 114; *Jones* v. *Dils*, 18 *Id.* 759; *Orr* v. *Wiley*, 19 *Id.* 150.

The third and most material assignment is that the court erred in declaring void and setting aside the tax deed and the deed from the defendant Edmiston to the appellant.

The counsel for the appellant seems to take it for granted that the plaintiffs are confined to the specific allegations of their bill as to the grounds therein set forth for invalidating the tax sale and deed. This is clearly a misapprehension of the rules of equity pleading. While it is proper and desirable that the plaintiff should set out in his bill the grounds on which he claims the deed, or other written instrument assailed, is invalid, still if such deed or instrument is exhibited with and made part of his bill and it appears upon its face to be invalid, the court will not decline to declare it void and set it aside simply because the plaintiff did not in his bill specify the particular ground upon which the court regards it void—*Carskadon* v. *Torreyson*, 17 W. Va. 43.

The deeds complained of as well as the proceedings of record in the office of the clerk of the county court of said

county on which said deeds are founded, including the return of the sale made by the sheriff of the land in controversy, are made parts of and exhibited with the plaintiffs' bill in this cause. An inspection of said return of the sheriff of the list of sales fails to disclose when it was returned to the office of the clerk of the county court. The sale in this case was made by the sheriff on November 22, 1875, for the taxes of the years 1873 and 1874. The statute (Acts 1872–3, chap. 117, sec. 14,) requires the sheriff "within ten days after the completion of such sale," to return the list of sales with certificate of his oath attached thereto "to the clerk of the county court, who shall within twenty days thereafter, make an accurate copy thereof in a well bound book, and transmit the original to the auditor." The certificate shows that the oath of the sheriff is dated December 2, 1875, the tenth day after the sale. But it nowhere appears from any note or memorandum of the clerk or otherwise that said list of sales was returned to the said clerk's office within ten days. Nor does it show when it was returned in any other manner. In *Barton* v. *Gilchrist*, 19 W. Va. 223, this Court upon full consideration of the subject decided that: "It was the official duty of the recorder to note in his office the day on which the sheriff returned to his office his list of sales of lands for delinquent taxes and the certificate of the oath attached thereto. If he failed to make such note so that his office did not show when such list was returned by the sheriff to the recorder's office, this omission is such a fact appearing on the face of the proceedings of record in the office of the recorder, as renders invalid any deed he may have made to a 'purchaser of the land sold for such delinquent taxes."

This decision was made under the provisions of chapter 31 of the Code of this State and in construing section 14 of said chapter. The provisions of chapter 117 of the Acts of 1872–3 govern the sale made in the case before us, and section 14 of said last mentioned chapter is identical with said section 14, of the Code except that it has substituted for the word "recorder," the words "clerk of the county court." The other provisions of said chapter 31 of the Code are not materially changed by the said chapter 117 of the Acts of 1872–3. The changes made certainly do not affect the con-

struction of section 14 as given by the court in the case just
quoted from—*Dequasie* v. *Harris*, 16 W. Va. 345 ; *Williamson*
v. *Russell*, 18 W. Va. 612, 626 ; *Jones* v. *Dils*, *Id.* 759 ; *Orr*
v. *Wiley*, 19 *Id.* 150.

This decision must be regarded as having defined the law
of this State, and as the clerk in this case has, like the re-
corder in that case, entirely omitted to note in his office the
day on which the sheriff returned his list of sales, the deed
made by the clerk to the defendant, Edmiston, on October 13,
1877, for the land in controversy, must be held unauthorized
and void.

The tax-deed from the clerk to Edmiston, having been thus
declared void, it follows unquestionably that the deed from
Edmiston to the appellant must also be held void.  A tax-
sale is the culmination of proceedings which are matters of
record ; and it is a reasonable presumption of law, where one
acquires rights which depend upon matters of record, he first
makes search of the record in order to ascertain whether
anything shown thereby would diminish the value of such
rights, or tend in any contingency to defeat them.  A tax-
purchaser, consequently, cannot be in any strict technical
sense a *bona fide* purchaser, as that term is understood in the
law.  And for the same reason his vendee cannot be such
purchaser ; because a *bona fide* purchaser is one who buys an
apparently good title without notice of anything calculated
to impair or affect it ; but the tax-purchaser and his vendees
are always deemed to have such notice when the record shows
defects.  They cannot shut their eyes to what has been re-
corded for the information of all concerned, and relying
implicitly on the action of the officers, assume what they
have done is legal because they did it.  It is indeed a pre-
sumption of law that official duty is performed ; but the law
never assumes the existence of jurisdictional facts ; and
throughout the tax proceedings the general rule is, that the
taking of any one important step is a jurisdictional prerequi-
site to the next ; and it cannot, therefore, be assumed because
one is shown to have been taken that the officer performed
his duty in taking that which should have preceded it—
Cooley on Tax. 328.  The rule *caveat emptor* applies strictly
to such purchaser.  He takes all the risks of his purchase,

and if he finds in any case that he has secured neither the title he bid for nor any equitable claim against the owner he must submit to the loss as any other purchaser does who takes a questionable title without warranty.

The title of the appellant derived from the tax sale in this cause being void, it is immaterial to him, as he supposed in his answer to the plaintiffs' bill, whether or not the conveyances by the plaintiff Simpson to Young or from C. R. Smith assignee in bankruptcy of said Young to the plaintiff, McCluer, are sufficient to invest title in the plaintiff McCluer. But in fact, I think, the record sufficiently establishes McCluer has such title. The deed from C. R. Smith, assignee, to McCluer is made a part of the plaintiffs' bill, and it states that W. H. Young was in 1874, adjudged a bankrupt by the district court of the United States for the district of West Virginia, that C. R. Smith was appointed assignee of said Young and as such conveyed Young's interest in the land to the plaintiff McCluer. If the answer of the defendants had denied these facts directly it would have been necessary to introduce from the proceedings of the bankrupt court the orders adjudicating Young a bankrupt and the appointment of Smith as his assignee— *Warren* v. *Syme*, 7 W. Va. 474, 494. But as the answer does not clearly and unequivocally deny the statement of these facts and they were not controverted or questioned in the court below, this Court will not permit the defendants to controvert them for the first time in this Court— *Cocke* v. *Minor*, 25 Gratt. 246; *Coffman* v. *Sangston*, 21 Id. 263; *West* v. *Am. Ex. Bank*, 44 Barb. 176; *Cook* v. *Hays*, 9 Gratt. 142.

The last assignment is that the court erred in not making provision for compensation for improvements made on the land by the appellant and for taxes paid by him.

In regard to the alleged improvements there is not a scintilla of proof in the record that any such were made on the land. The appellant in his answer asks that the cause may be referred to a commissioner to ascertain the value of the improvements placed by him on the land. Whether this would have been a proper matter for an order of reference or not, if it had been proved that improvements had been made, we need not consider, because it was plainly not

proper to make such reference in the absence of proof that any improvements had been made. The court did not err, therefore, in failing to make provision for improvements not proven to have been made. Whether or not, if proved, the appellant would have been entitled to compensation for improvements while claiming through a tax-title which the records on which it is founded show was void, we express no opinion, as that question does not arise in this case —Burroughs on Taxation, p. 345; Cooley on Taxation, 371.

The question as to the right of the appellant to be repaid the taxes paid on the land by him is one of much importance and one, so far as I can find, never before decided in this State or Virginia. In *Yancy* v. *Hopkins*, 1 Munf. 419, the court set aside a tax-deed and deed from the tax-purchaser to a third party and ordered those claiming the land under said tax-title to pay to the plaintiff "the profits of the land since the sale thereof, after deducting the *taxes then due* for the same to the public." In *Lohrs* v. *Miller*, 12 Gratt. 452, the land was taxed in the name of the true owner and the taxes duly paid by him; but his deed from his grantor was not legally recorded and the land was afterwards granted to a third party. In a contest about the title the junior grantee claimed that the land had been forfeited for non-entry in the name of the grantor of the true owner and was properly granted to him as forfeited land. The court held that the taxes having been paid by the true owner, it did not become forfeited in the name of his grantor, although such owner's deed had not been duly recorded, and consequently the land was not subject to grant and the junior grantee acquired no title. In *Witham* v. *Sayers*, 9 W. Va. 671, it was held that, where the same land is charged by the assessor with taxes in the names of the grantor and his grantee, and the taxes are paid by the grantee, if the land is sold for the non-payment of taxes assessed against the grantor, the purchaser at such sale acquires no title. The same principle was decided in *Bradley* v. *Ewert*, 18 W. Va., 598.

It will be observed that in all these cases the two parties assessed with taxes claimed the same land in privity and by the same title. The relation of vendor and vendee subsisted between them and neither asserted an independent or hostile

title to the other.    The erroneous assessments grew entirely out of the mistake of the assessor and not out of the conflicting claims or titles of the parties.    The payment of the taxes, therefore, by one party was a full satisfaction of the taxes legally chargeable upon the land and the State could have no further claim for taxes against the land under the title thus held in privity and successively by the vendor and vendee.

The principles involved in those cases, I think, have no application to cases in which the land is assessed in the names of two or more parties between whom no privity of title exists and each of whom claims under a distinct title or color of title adversely and in hostility to all other claims or titles.    If any such hostile claimant desires to prevent a forfeiture of his title he must enter the land on the assessor's book in his name and pay the taxes thereon.    The fact that some other adverse claimant has entered the same land and paid the taxes in his name will not enure to his benefit and protect his title or claim from forfeiture.    Where there are two or more such claimants the State exacts taxes from each and provides for the forfeiture of any title not entered on the assessor's books, or, if entered, on which the taxes are not paid. This is what I understand to be the purpose and policy of article 13 of the Constitution of this State and statutes made in pursuance thereof.

By the third section of said article it is provided that all titles to lands forfeited for the non-payment of taxes, or for the failure of the owners to enter them on the assessor's books and have them charged with taxes, shall be transferred to junior claimants, designated in classes, who shall have paid the State taxes thereon.    This provision unquestionably contemplates the right of the State to exact taxes from two or more claimants for the same land.    If such were not the true construction there never could be a forfeiture that would transfer the title to a junior claimant, because the junior claimant cannot take the title unless he has paid the taxes and there can be no forfeiture of the senior title so long as the taxes are paid.    If, therefore, the payment of the taxes by the junior inures to the benefit of the senior claimant no forfeiture can take place and the senior title can never

be transferred. I think, therefore, it is plain that the State intended by said constitutional and statutory provisions to require all persons claiming distinct and hostile titles to the same lands to pay taxes thereon and that the payment of the taxes by one of such claimants will not inure to the benefit of the others or protect their titles from forfeiture.

The next enquiry is, what is the relation of the claimant under a void tax-deed to the owner of the land conveyed by such deed? Do they stand in privity or in hostility to each other? Privity is the mutual or successive relationship to the same rights of property. Between the tax-title claimant and the owner of the land there is neither a mutual ownership of, nor a succession of the same rights to, the land. There never was any contract between the parties, nor any conveyance by which the title of the one was transferred to the other. On the contrary all their relations are of a nature hostile and adverse to each other. The tax-deed is void and a void instrument can transfer nothing, it is a nullity, at least, as a contract or conveyance. If it fails to convey the title, it certainly can create no privity or succession of rights to the land. It was void from its inception and could, therefore, never have transferred any right to the land or established any privity between the claimant under it and the owner of the land. It follows, then, as a corollary, that the payment of taxes by the tax-title claimant in his own name does not inure to the benefit of the owner or exempt him from paying taxes on the same land for the same years in his name; and consequently the owner is under no legal or moral obligation to reimburse such claimant for taxes so paid on the land in his name. Some of the States have special statutes by which the State transfers her claim for the taxes which would have been chargeable to the owner to the tax-title claimant who paid them and requires the owner to reimburse him for such payment. But we have no such statute, and, therefore, are unable to grant any such relief.

The evidence in this cause shows that for the years 1878, 1879 and 1880, the taxes on this land was charged in the name of and paid by the defendant Edmiston, and that for he years 1881 and 1882 they were charged in the name of and paid by the appellant. It does not appear who paid the

taxes prior to 1878, or that the owners have not paid taxes in their own names for all the years above mentioned. It was their duty to do so, notwithstanding the payments made by Edmiston and appellant on their claim of title, and in the absence of any evidence to the contrary we must presume such payment was made. If, however, the owners have not paid said taxes they are still liable for the same. I am, therefore, of opinion that the court did not err in refusing to order the plaintiffs to refund to the appellant the taxes paid on the land by him.

For the reasons aforesaid the decree of the circuit court must be affirmed.

AFFIRMED.