## DETERMINED BY THE

# SUPREME COURT OF APPEALS

### OF

# WEST VIRGINIA.

## CHARLESTON.

\*State *v.* West Branch Lumber Co.

Submitted February 6, 1908.   Decided December 22, 1908.

### Dissenting Opinion.

Brannon, Judge, *(dissenting):*

I do not concur in the decision, and there is much of the opinion in which I do not concur.  The opinion underrates and discredits and casts doubt over much law of good standing long prevalent constituting rules of real property.

Can the State maintain a bill under Code 1899, chapter 105, to sell land as forfeited for omission in the former owner's name from the tax books after a sale for taxes to an individual, whose deed is void for defects in the sale, when the tax-purchaser has paid taxes in his own name for the same years in which it was omitted in the former owner's name?

Cases cited in *State* v. *Harman,* 57 W. Va. 447, say that a tax sale breaks up the line of title, creates a new title.  I cite also Cooley on Taxation 960, and *Hefner* v. *N. W. Ins. Co.,* 123 U. S. 751, upon the Iowa statute similar to ours, as stated in the *Harman Case.*  I add that in *Rich* v. *Braxton,* 158 U. S. 375, the tax-purchaser claimed that he could take the benefit of

*For majority opinion, see 64 W. Va. 673, which was decided December 22, 1908, but copy of dissenting opinion was not furnished the Reporter until November 9, 1909, too late to be published either in Vol. 64 or Vol. 65.

a forfeiture as one deriving title through his tax deed—that is, through the former owner, as if in privity with him; but on page 405 Justice Harlan said: "It is idle to say that they had title to any part of the lands 'regularly derived,' mediately or immediately, from or under a grant from Virginia or West Virginia." If they held the same title, they would have had such regular derivation of title; but they did not hold the same title. If such is the case with a good tax deed, it is worse with a void one. No law can be found to show that the tax-purchaser holds the same title as the former owner, or in privity with him. It is not the same title vested in the former owner that is conveyed by the tax deed to the tax-purchaser. The title of the former owner, if the tax deed is void, remains in him, and the colorable title or claim of the tax-purchaser and the former owner's title are distinct and hostile, so much so that payment of taxes on the same land by the tax-purchaser in his name will not prevent the forfeiture of it for omission in the former owner's name for the same years. *Simpson* v. *Edmiston,* 23 W. Va. 675; approved in *Lynch* v. *Andrews,* 25 *Id.* p. 757; *Bryant* v. *Grove,* 42 *Id.* p. 15; *Sturm* v. *Fleming,* 26 *Id.* 54; *Stockton* v. *Craig,* 56 *Id.* 473; *State* v. *Harman,* cited above. Thus, that title of the former owner did not pass by the tax sale. It therefore remained in the old owner, as it was before the tax sale. It is omitted from the tax books, and by the Constitution is forfeited, and according to *Simpson* v. *Edmiston,* became forfeited. If the State cannot sell it, what is the reason? It cannot be that the tax sale and the tax deed work a warranty. It is well settled that the State makes no kind of warranty by a tax sale. The rule of *caveat emptor* (look out purchaser) applies to such sale in all its vigor. *Hoge* v. *Currin,* 3 Grat. 201; *State* v. *Sponaugle,* 45 W. Va. 415 (pt. 8). The State sells no lands. She only sells the *tax debtor's* land; she enforces a lien by legal process, just as a creditor sells his debtor's land or house by decree or execution. If an individual make a deed without warranty, he can set up another title afterwards acquired. Can not the State? It is not upon any idea of estoppel by warranty that the state is prevented from disposing of the tract by sale. It is, of course, not from estoppel by record. It can only be by estoppel by conduct, by misconduct or misbehavior that the state is stopped. But such estoppel does not

apply to the state. Being sovereign, it can do no wrong. The general rule is that the State is exempt from equitable estoppel. Herman on Estoppel, sec. 1128; *Carolina Bank* v. *State,* 85 Am. St. R. 865. But many cases hold the state bound ·by estoppel by record. *Cecil* v. *Clark,* 44 W. Va. 659, 674. Some cases hold it estopped by deed. The state granted land to an alien, who could not take; but the state was estopped from afterwards averring his alienage. *Com.* v. *Andre,* 3 Pick. 224. But the State cannot be estopped on the theory of estoppel by misconduct. Therefore, estoppel cannot be appealed to to bar the state. It is said that by her law, under her law, she has sold the land and she cannot turn around and impeach her act. Is this estoppel *in pais?* She has by law offered the land for sale, induced persons to buy, and cannot afterwards set up adverse claim. So it may be said of a plaintiff selling under a decree or execution. A rule of estoppel *in pais* is, that the party must mislead one into injury who knows no better. *Ketchum* v. *Duncan,* 96 U. S. 659 (24 L. Ed. 868). But does not the tax-purchaser know the title of the land he buys, and the regularity of the sale more than does the State? How has the State misled him? The State made a grant; then a second one of the same land; then the title of the older grant came back to the state by escheat: Held that the State could set up this title by escheat against the title conferred by the elder grant. *Governeur* v. *Robertson,* 11 Wheaton 332, 359. The court said that the claim of the state was not barred by estoppel either by deed or wrongful action, as the state is not subject to such imputation. The case of *Elmondorff,* 3 Litt. 478, sec. 10, p. 482, discusses the whole subject, holding that the state is not barred from claiming ·by escheat an older title against her later grant. Reaffirmed in *Smith case,* 6 T. B. Monroe 624, 629. So *Taylor* v. *Shufford,* 15 Am. Dec. 512; 4 Dev. & Bat. 407. Recitals in state grants not an estoppel on it. *Carver* v. *Jackson,* 4 Peters 87. State is not estopped, except by legislative grant from asserting title to property. *Alexander* v. *State,* 56 Ga. 478. Sale for taxes does not bar claim of state under title by escheat. *Read* v. *State,* 74 Ind. 252. The court in that case says that to set up an estoppel *in pais* it is essential that one party act in ignorance of facts, and then says that the tax-purchaser was as well acquainted with the facts as the state. It

added with emphasis that the tax deed only conveyed the owner's title, not the state title; that there was no warranty by words or implication; that the deed was not even a quit claim; and that it could not for a moment be thought that by the tax sale it was intended to pass state title by escheat. The same is held in *Crane* v. *Reeder*, 25 Mich. 304.

Under these authorities the state may claim another title even against her solemn grant. Why, then, logically, can she not claim the better title against a void title under a mere tax sale? That is no grant by her. The state bought land for taxes. It was put on the tax books, and later sold to an individual. She was held not estopped by the void sale. *Totten* v. *Nighbert*, 41 W. Va. 800.

Certain cases are cited to establish estoppel against the state. Cases can be found for everything. *Commonwealth* v. *Andre*, 3 Pick. 224. The state it was held could not declare her grant void only because the grantee was an alien. That is different. It was not a question whether she could set up a *different* title, but whether she could impeach that very deed. Besides, in that case the grant was made by the Legislature—that particular grant. *Commowealth* v. *Pejepscut*, 10 Mass. 155, was an act of the Legislature that a certain monument was a monument in an Indian deed. Held that this act of the Legislature barred the state from disputing it. This was statute law. Counsel does not seem to rely pointedly on the theory of estoppel, but contract. He says the state and tax-purchaser made a contract. It was that if the owner should not redeem, the purchaser should have a deed from a public officer. I do not say that an explicit contract does not estop the state; but this is not a contract in such sense. The state simply used legal procedure provided by statute to enforce a lien. Does a creditor make a contract when he sells land or personalty to enforce his lien by decree or execution? I think not. Likely he could not say his process was void; but could he not set up adverse title to the thing sold? In *Forqueran* v. *Donnally*, 7 W. Va. 114, it is said that the sale of land for taxes makes a civil contract between state and purchaser which the state cannot impair. That was a sale in 1860. The law then provided for a deed to the purchaser. A statute repealed that section of the Code, leaving no law to make a deed for land sold that year; but a

deed was made. The court held that the Constitution of 1863 kept good a right to land acquired under the law of Virginia, and that the law in force at the date of sale was a part of the contract, and repeal could not impair it. I should call it not a contract, but vested property right preserved against impairment by repeal or legislation. Such right as it was could not be taken away, but by due process. That is not our question. That does not show that a tax sale forbids the State to set up another hostile title.

But for *Simpson* v. *Edmiston,* cited, and other cases, holding the former owner's title distinct from that of the tax-purchaser, and that the former owner's title could not be saved by payment of taxes by the tax-purchaser, this difficulty would not exist. It is argued, however, that it is only the former owner who can use that case to show forfeiture, not the state. If there is forfeiture for one purpose, why not for all? The bad tax deed left title in the state. That is forfeited and vested in the state. How can it go from the state to the tax-purchaser? By what process? Does the tax deed do so at the end of five years from the sale? It did not pass title at its date. It is not the state's deed. If it is, it has no warranty. At its date the state had not yet acquired title. A quit claim deed would not pass after acquired title. The trouble is the decisions say that the state has one title; the tax-purchaser another.

To hold that the state cannot have a bill to sell such land we must overrule *Simpson* v. *Edmiston,* 23 W. Va. 675; *State* v. *Sponaugle,* 45 *Id.* 415; *State* v. *McEldowney,* 54 *Id.* 695; *State* v. *Harman,* 57 *Id.* 447 and *Bryant* v. *Grove,* 42 *Id.* 10. The only way in which the tax purchaser can get the title is by possession and payment of taxes under the first or third class of Article 13.

The Constitution says "it shall be the duty of every *owner* of land to have it entered on the land books." As the tax deed is void, the purchaser does not become "owner," but the owner still remains owner. The tax-purchaser is not owner. Nor is he in privity with the owner, even if his deed be valid, since he holds a distinct and hostile title according to law above cited and in *State* v. *Harman,* 5 S. E. p. 833. If payment by the tax-purchaser keeps the land from forfeiture his payment pays for the old owner, and destroys himself, because by his very pay-

ment he disables himself from taking the benefit of the forfeit-
ure of the old owner's land, since his payment prevents
forfeiture. It is a rule of necessity that a tax title is an en-
tirely different title from the title of the former owner. It may
seem strange at first blush; but the authorities everywhere so
say, and to hold differently would be to run afoul of a great
current. I said it was a rule of necessity to hold a tax title a
new title; otherwise the land in the hands of the tax-purchaser
would still be subject to judgments and other liens against the
former owner. We know that it is not so liable in the hands of
the tax-purchaser, and this is a strong argument to show that
it is another, a new title.

The purchaser under a void tax deed is not "owner" under the
Constitution. He could not take title from the owner. Even
if his deed were good, he holds not the former title, but a differ-
ent new one; but how can it be said at all that he holds, or gets,
or can claim in privity with, the title of the former owner,
when his tax deed is null and void and passes nothing?

A test of want of privity occurring to me is this: Can a
purchaser under a void tax sale tack his possession to that of
the former owner for the necessary period of adverse possession?
I think not, for that requires privity. Could even one claiming
under a valid deed? A lien against the former owner is gone.

The opinion of the Court bases on section 29, chapter 31,
Code. That is its ground. That section says that a tax deed
shall be *prima facie* evidence against the state, that "such estate
as is mentioned in the twenty-fifth section of this chapter vested
in the grantee in the deed;" that is, that all the title in the
former owner vested; but the decision and opinion say that it
is *conclusive* upon the state. No matter that the tax deed was
void and passed no title, it is conclusive on the state to prove
that it passed the former owner's title. The Constitution says
that title is in the state by forfeiture and must be sold; but
in steps section 29 and gives it to the tax-purchaser by an iron
bound estoppel; one says title is in the state, the other operates
to say it is not. My position is, that a void tax deed gives no
title by common law; but by this section *prima facie* it does,
but the state may prove the contrary. Now, when the state
proved that this land was omitted from the tax books in the
former owner's name, and that the tax sale was void, that vest-

ed title by forfeiture in the state under *Simpson* v. *Edmiston,*
23 W. Va. 675. The deed being void, passed no title. That is
clear. 'It is proven that non-entry left the owner's title in the
state. Those two facts utterly overthrow the *prima facie* case
made by the tax deed under section 29. When we see, first,
that the tax deed of its own force passed nothing, and second,
that the land was off the books in the former owner's name, that
overruled the *prima facie* case, and made section 29 no longer
operative in the case. If we would leave out of consideration
the last clause of the section, the tax sale would fall, the *prima
facie* case be overthrown; but that clause makes it plainer. Its
words are: "Nothing in this chapter or any other law contained,
shall be construed as precluding the State, or any county court,
board of education or municipality, from instituting and main-
taining any suit or suits which might be instituted or main-
tained by any person claiming the land sold or any lien thereon,
for the purpose of setting aside, for any reason, any tax sale or
deed for land sold for taxes. The auditor may, in his discre-
tion, authorize the institution or prosecution of any suit, for
and in the name of the State, for such purpose." See how care-
ful to save the public right. Could not the former owner sue
to avoid the deed and show it void, passing no title, by proving
defects, and overthrow the *prima facie* effect of the deed? The
statute in words gives the state the same right. It allows it
to sue "to set aside" the deed "for any reason." It is careful
to empower the auditor to sue "for such purpose." No one
would say that the section is conclusive on the former owner.
The same language applies to the state. Still the deed is *prima
facie* only as to one, conclusive as to the other.

Before chapter 130, Acts 1882, section 29 did not apply to
the state; it gave the deed no *prima facie* force against the state,
and it did not contain the last clause saving its right to set
aside a tax deed; but chapter 22, Acts 1887, included the State,
making such deed *prima facie* evidence against it; but for cau-
tion, perhaps needless, it at the same time reserved right to the
state to repel the *prima facie* case. The fact that 'for the first
time the deed was made *prima facie* against the
state, shows it was also the purpose, by the last clause, to put
in a proviso to save the state right to assail a tax deed like a
natural person. The argument is made that until 1887 no law

gave the state a chancery suit to enforce a tax lien, and that when the Legislature gave such suit, it put this saving clause in section 29 to save such lien and suit. There is no force in this, because there could be no lien or suit on it for taxes never assessed. That suit is for delinquent taxes assessed, not for omitted taxes. Moreover, this saving clause does not mention lien, but saves right to the state to set aside the deed for any cause.

The law required one claiming under a tax sale to prove regularity in every step. Tax titles generally failed under this rigid requirement. The purchaser must prove assessment, delinquency, publication of sale notice, that the officer was sheriff, and that the land was sold and a survey made. This statute was passed to dispense with such full proof of preliminaries by making the deed *prima facie* good, but never to bind anybody by an iron rule of conclusion. *Dequasie* v. *Harris,* 16 W. Va. 345. That case says this section must be construed strictly; this case gives it ultra liberal construction.

I have above spoken of section 29, chapter 31, as found in the editions of the Code published in 1887, 1891, 1899 and 1906, if that section as in those Codes applies to the void tax deed made in 1869. That section as found in the Code of 1868 was the law in force when the void tax sale took place. How is it under that section? It made the tax deed *prima facie* evidence against the former owner, "and conclusive evidence against all other persons," of certain things. It did not include the state as bound by such *prima facie* evidence, and I assert that the state could not be bound by it, unless expressly mentioned. It is not claimed that the state is included in that *prima facie* clause; but the greater claim is made that the state is a "person" under the other clause, and that the deed is not merely *prima facie,* but conclusive evidence against it. I deny this. The state is not a person meant and intended by that clause. Why call it a "person?" Why bar the public right and title except by the express mention of the state? It has always been held that the state is not bound by a statute of limitation without express provision that it shall be so bound. Why shall the state be bound under this statute any more than by the statute of limitations? As shown above a tax deed is by common law neither a warranty nor an estoppel against the

state.   Shall we suppose that the Legislature intended to go at once to the other extreme and bind the state finally and conclusively by mere inference?   I thought that statutes in derogation of the common law should be strictly construed; but in this case, at one bound, without any words or anything to indicate it, a deed is converted from one which did not bind the state to one that is a conclusive bar of its just right.   That is against proper principles of construction.   If this is not so, why did the Legislature, in 1887, change section 29 and make the deed do what it never did before, operate against the state with *prima facie* effect?   Because the Legislature knew that without the inclusion of the state by express language the state would not be bound.   I assert the proposition that acts of bar and estoppel do not preclude the state without express words.   Furthermore, can we think for a moment that the Legislature, by original section 29, intended to make a deed absolutely void, which never had any force, not only good and valid, but a *conclusive* bar against the state?   "No question of estoppel by deed can arise where the instrument is absolutely void."   11 Am. & Eng. Ency. L. 393.   Much common law may be cited to prove that estoppels do not operate against the state because it is sovereign.   A deed from the state passes the title vested in it at the time, but not an after acquired title.   In this case the title by forfeiture vested in the state after the tax deed.   See *Doe* v. *Shufford*, 4 Hawks (11 N. C. 116) ; *Wallace* v. *Maxwell*, 51 Am. Dec. 380; *Casey* v. *Inlow*, 39 *Id.* 660; 11 Am. & Eng. Ency. L. 396.   The erroneous opinion is that section 29, as it was before the Act of 1887, made the tax deed conclusive evidence against the state, and that the Act of 1887 mitigated its effect by making it only *prima facie* evidence; whereas, the correct opinion is that that section before the Act of 1887 did not affect the state at all, and that the Legislature in 1887 made the deed *prima facie* evidence against the state, giving it a force which the common law did not give it.   I say that to make the old section bind the state it was necessary to include it by express words.   *State* v. *Brewer*, 64 Ala. 287.   "States and national government are not bound by a provision of a general statute which affects their prerogatives, rights or interests, unless expressly named or included by necessary implication."   26 Am. & Eng. Ency. L. 644, citing many authorities.   In *Bennett* v. *Auditor*, 2 W. Va. 441, we

find that, "It is a well settled rule of construction that, the State is not to be presumed to have discharged the public rights without express declarations or manifest intention to that effect." Endlich on Statutes, section 161, says that "the law is *prima facie* presumed to be made for subjects only. At all events, the Crown is not reached except by express words, or by necessary implication, in any case where it would be ousted of an existing prerogative or interest. It is presumed that the Legislature does not intend to deprive the Crown of any prerogative, right or property, unless it expresses its intention to do so in explicit terms, or makes the inference irresistible. Where, therefore, the language of the statute is general, and in its wide and natural sense would divest or take away any prerogative or right from the Crown, it is construed so as to exclude that effect. Thus, the compulsory clauses of Acts of Parliament."

I am gratified, as relieving a hardship, that the majority see their way to the decision made; but how as to the *law* to sustain it?