# CHARLESTON.

## PRESTON v. BENNETT.

### Decided May 3, 1910.

1. TAXATION—*Two Sales for Taxes—Right of First Purchaser.*

   If land be sold twice at the same tax sale for two several years delinquency of taxes assessed in the names of two successive owners, and an individual buys under the sale made to satisfy the first delinquency and, after a year, obtains a deed and records it, he will have title against the state who buys under the sale made to satisfy the second delinquency.

2. SAME—*Sale—Necessary Parties—Unknown Claimant.*

   A claimant of land that is proceeded against as the state's land under chapter 105 of the Code, who is known or whose

claim to the land can be ascertained by the use of reasonable diligence, should be made a party to the bill, *eo nomine*, and, if a resident of the state, should be served with process.

3. SAME—*Sale*—*Necessary Party*—*Eo Nomine*.
    It is error to proceed against such claimant under the general designation in the bill of "unknown claimants," and any decree that may be pronounced against him, without his appearance in the cause, will be void as to him for want of jurisdiction and may be collaterally assailed.

Error to Circuit Court, Raleigh County.

Action by A. D. Preston against L. M. Bennett. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Charles E. Hogg* and *M. C. Brackman,* for plaintiff in error.

*J. W. McCreery* and *W. H. McGinnis,* for defendant in error.

WILLIAMS, JUDGE:

This cause is here upon writ of error granted plaintiff to a judgment in ejectment rendered by the circuit court of Raleigh county on December 20, 1907, in favor of defendant. The case was tried by the court, in lieu of a jury, upon the title papers of the respective parties and upon an agreed state of facts. Plaintiff claims title by deed from J. A. Ewart, Commissioner of School Lands, dated February 4, 1901, and defendant claims the same land under a tax deed made to his immediate grantors bearing date the 7th of January, 1897, and recorded January 14, 1897. The question is purely one of title. The land was returned delinquent for non-payment of taxes for each one of two succeeding years, in the respective names of the successive owners, and was twice sold at one and the same delinquent tax sale. In one instance it was bought by R. V. and J. P. Buckland and G. M. Smith who are defendants' immediate grantors, and in the other by the state who afterwards sold it as school lands to plaintiff. The land was delinquent for nonpayment of taxes assessed thereon for the year 1893 in the name of Jessie M. Myers and Nettie M. Ferguson, the then owners, as a tract of 373 acres and 119 poles. On October 14, 1893, Jessie M. Myers conveyed her interest to Nettie M. Ferguson, and by deed dated February 5, 1894, Nettie M. Ferguson and husband conveyed

the land to Margaret Ferguson to whom it was charged on the land books with taxes for the year 1894. It was sold for the delinquent taxes of each of those years in the names of the respective owners. At the tax sale November 4, 1895, defendants' grantors became the purchasers under the sale made on account of the delinquent taxes of 1893, and the state became the purchaser under the sale made on account of the delinquent taxes of 1894. In 1898 the state instituted a suit against the land in the name of Margaret Ferguson, and in January, 1901, it was sold under a decree in that suit, and was bought by A. D. Preston to whom the school commissioner made a deed, as above stated. Neither the defendant nor his grantors were made parties to that suit.

The majority of the Court are of opinion to affirm the judgment of the lower court for the following reasons:

First. Because by the previous decisions of this Court in the cases of *State* v. *West Branch Lumber Co.,* 64 W. Va. 673, and *State* v. *Snyder, Id.* 659, the state is estopped from claiming title to the land as against Bennett who claims under the tax purchasers, Buckland and others, who had obtained their deed and placed the same on record, notwithstanding there may have been irregularity committed either by the Auditor in failing to certify both years taxes to gether as one lien against the land to be satisfied by one sale, or an irregularity committed by the sheriff in failing to combine the two years taxes and make one sale of the land to satisfy both. Whether the two sales amounted to an irregularity which would render either one, or both, of said sales voidable, and whether or not it was the duty of the auditor to certify both years taxes to be satisfied by one sale, they hold it is unnecessary to decide inasmuch as the effect of the two decisions, above referred to, construing section 29 of chapter 31 of the Code, makes the tax deed to the Bucklands and Smith conclusive evidence against the right of the state to set up any title claimed to have been vested in the state prior to the time of the recordation of their tax deed.

Second. The sale of the land by the school commissioner to the plaintiff Preston is not binding on Bennett who claims by deed from the tax purchasers, for the reason that he was not made a party to the bill in that proceeding and was not served with process, and did not come into that suit by petition at any

time during its pendency. Section 6, chapter 105 of the Code, reads in part as follows: "All such tracts or parcels of land mentioned in any such report, not exceeding in quantity one thousand acres, may be included in one suit, but a separate suit may be brought and prosecuted for the sale of each tract of land exceeding in quantity one thousand acres; and the former owner of any such tract of land at the time of the forfeiture thereof, or the person in whose name the same is forfeited, shall, if known, be made a defendant in such suit, and all persons claiming title to or interest in any such lands shall, as far as known, be made defendants therein." Bennett, the defendant in the case, at the time of the institution of the suit by the school commissioner was a claimant of the land under deed from the tax purchaser dated May 24, 1898. His title to the land was a matter of record. Unless it be right to say that a claimant of land may be properly proceeded against as an "unknown claimant," regardless of the nature of his claim or of the place of his residence, Bennett certainly occupied the position of a known claimant. A mere casual examination of the record by the school commissioner would have disclosed the fact that Bennett was a claimant of the land under the tax deed made to his grantors pursuant to a sale of the land had at the same time of the sale under which the state claimed title, and if in fact the school commissioner did not know that he was a claimant he could have ascertained the fact by reasonable diligence. Bennett, therefore, occupied the position, in contemplation of the statute, of a *known claimant,* and was, therefore, entitled to be made a party to the bill and to be served with process. It would be too harsh a construction of the statute to interpret it to mean that a claimant of land, whose claim thereto is a matter of record and can be easily ascertained, may be proceeded against by order of publication as an "unknown claimant," and be bound by a decree which would take from him his land without more notice than such a publication. It is a fundamental principle of the common law that every person shall have an opportunity to be heard in court before he shall be deprived of his property, or his liberty, and this right is guaranteed to him by both State and Federal constitution. To divest one of his property it must be by "due process of law," which means that he must be given a reasonable notice, and a chance to be heard about

his defense. By the use of the words "unknown claimants" the statute does not mean simply such persons, claimants, as may not happen to be known personally to the school commissioner at the time of filing his bill, but it means such as are not known to him and can not be ascertained by his reasonable diligence. To illustrate the harshness of the rule, if we should construe the statute otherwise, let us instance a case which might easily happen: Suppose a tract of 1,000 acres of land has been forfeited to the state in the name of A, for failure to enter the same on the land books, and the state proceeds against it in the name of A and all other "unknown claimants" of the land. B is the owner of a tract of 100 acres of land lying within the bounds of the larger tract, to which he has perfect title adverse to A's title, and has no knowledge of the fact that his tract lies within the larger tract. The description of the larger tract and the proceedings against it in the name of A and all "unknown claimants" would scarcely give any information to B that his land was included within the bounds of the larger tract, and yet if the statute should have the effect to bind B as an "unknown claimant" of a portion of the land it would divest him of his title without any notice whatever, notwithstanding he may be in actual possession of the land and may have paid all the taxes chargeable on it. The hardship of such a rule would be shocking to the conscience, yet such would be the unavoidable effect of it if the statute should be so construed as to permit such a claimant to be proceeded against, and bound by the proceeding under the general and indefinite description of "unknown claimants" simply because his claim to the land happened to be a fact unknown to the school commissioner. The statute should not be construed as intending to dispense with the common law right of an individual to be personally served with process, or notice, when he occupies such position or relation to the property involved as would entitle him under the common law to be so served, and, being in derogation of a common law property right, the statute should be construed most strongly in favor of the individual claiming the right. *Mosser* v. *Moore,* 56 W. Va. 478; *Millhiser Mf'g Co.* v. *Gallego Mills Co.,* 101 Va. 579; *Fork Ridge Baptist Cemetery Ass'n* v. *Redd,* 33 W. Va. 262.

The evident purpose of chapter 105 is to bring in, and make parties to the suit, all claimants to the land, or any part of it, which the state is seeking to sell, regardless of their source of title or the nature of their claims, and to require the conflicting claimants to litigate their respective claims, with the state and incidentally among themselves, so that a final decree in such proceeding may be conclusive upon all parties, known and unknown, who claim title by any means whatsoever to all, or to any portion, of the land proceeded against, and to create, as it were, by such a proceeding a title in the purchaser at the sale a new title to the land as clear and as free from encumbrances as it was possible for the state to make by grant under the old patent laws of the state of Virginia to a tract of land then granted for the first time. In other words, there is a twofold purpose in the statute, viz: (1) to sell the state's land and to confer an indefeasible title, and (2) to give the former rightful owner who has been in default in not paying his taxes, if it is ascertained there is such an one, an opportunity to redeem his land and to start him off afresh with the title which he had previous to the forfeiture, released of all claims for taxes previously charged or chargeable thereon in favor of the state. Such then being the purpose of chapter 105 of the Code, a claimant of the land who is known, or whose claim to the land is such that it can be ascertained with reasonable diligence, is entitled to be made a party *eo nomine* to the bill, and if a resident of the state is also entitled to be served with process, and unless so made a party and served with process, or unless he comes into the suit and is given an opportunity to litigate his claim, he is not bound by the decree of the court.

I concur fully in the majority opinion, but I think the opportunity is clearly presented to the Court in the present case to interpret section 4 of chapter 31 of the Code which sets forth the duties of the Auditor in relation to certifying delinquent lands to the sheriff for sale, and thus to avoid any future trouble which might arise in cases like the present one. In my opinion, the interepretation of this statute furnishes, of itself, a sufficient reason for upholding the tax deed to the Bucklands and Smith as against the state's claim of title to the land, and a better opportunity to construe it can hardly be again presented than is now presented by the record in this case. Its construction

would also tend to settle the law in regard to the duties of the auditor in relation to certifying delinquent lands to the sheriff, and would avoid, in the future, a repetition of the irregularity and resulting conflict of claims of title that are presented in this case. If the land had remained on the land books for 1894 in the name of the same person to whom it was assessed in 1893, and had been returned delinquent by the sheriff for each year, no difficulty would have arisen, and the taxes for the two years would have been combined and the land would have been sold once to satisfy the taxes of both years. But in the present case the confusion has arisen because of the attempt by the sheriff to make two sales of the same tract of land at one and the same tax sale to satisfy the delinquent taxes of two several years. This could not lawfully be done. It is impossible for two persons thus buying the same land to acquire title thereto. There can be but one title to the land. It seems to me either that one or the other of such sales is invalid, or that both are invalid. Section 4 chapter 31 of the Code reads as follows: "On or before the first day of November of each year, the auditor shall cause to be delivered to the sheriff or collector of taxes for every county two lists of the real estate therein, which, at the time said lists are made out, shall have been returned delinquent for the non-payment of taxes thereon for any previous year and not previously sold therefor, and on which the taxes and interest, or any part thereof, shall remain then unpaid and not released or otherwise discharged, with a statement of the several amounts due for state and state school taxes; county taxes for all purposes; school district and independent school district taxes; other district taxes for all purposes, and municipal corporation taxes for all purposes, on each tract or lot for each year with interest on each amount from the twentieth day of January in the year succeeding that in which such taxes were levied until the first day of November in the year such list is delivered as aforesaid to the sheriff, or collector, at the rate of twelve per centum per annum added thereto. But if the real estate has been sold for the non-payment of taxes, the same shall not be charged with, or again sold on account of any taxes for any year previous to that for the taxes of which the same was made; except, that if for any cause a previous sale of real estate purchased by, or in behalf of the State, has been or shall

be set aside by any court, and the taxes for which it was or shall be sold, have not been paid, the auditor shall include in such lists all such real estate, and the same shall be sold for the taxes and interest due thereon for the years for which it was previously sold, in like manner and with like effect as the other real estate mentioned in said lists."

This section is an *express* direction to the auditor to include in his certificate to the sheriff all the taxes due on the land with interest thereupon up to the 1st day of November of the year in which the list is returned to the sheriff, "for each year." This means taxes and interest thereon for all the years for which taxes may be unpaid, beginning with, and including, the year for which it was first returned delinquent. The sheriff then is required to sell the land *once* to satisfy all those taxes. It is the auditor's duty to ascertain all the taxes due on the land which the sheriff is directed to sell, whether the land remains all the time assessed to one person or whether it has changed ownership and is assessed for one year in the name of one person and for another year in the name of another person. I admit that in some cases this might be difficult to do, but it is a duty that evidently ought to be performed by some one, and I think the statute clearly defines it as one of the auditor's duties. There is certainly no statute directing the sheriff to do it; he is to be guided in making sale by the auditor's certificate. The auditor, in turn, is guided by the land books that come to him from the various county clerks' offices; these are duplicates of the ones remaining with the clerks of the counties, and if the clerks have performed their duty in noting the transfers of the lands on the land books it is a comparatively easy matter for the auditor to keep track of, and to identify the land. In case the land is delinquent for two several years, first in the name of one party and then in the name of his grantee, opposite the name of the person in whose name it is delinquent for the first year there will be a memorandum showing the transfer to the vendee, and opposite the name of the vendee, for the succeeding year, there will also be a memorandum on the land book giving the name of the person from whom the land was transferred. It thus becomes a very easy matter for the auditor to trace the land and the taxes assessed thereon, and to combine the taxes in one certificate to the sheriff, authoriz-

ing one sale only in the names of the two respective parties. If, as a matter of fact, the county clerks, in practice, do not preserve this information on the land books the auditor has power by direction to require them to do it, and it should be done. The law certainly does not contemplate two sales of the same land, at one tax sale, for two separate years of delinquent taxes simply because the land happens to be delinquent for two, or more, years in the names of the several successive owners. It is not only impossible to give two titles to the same land to two separate purchasers, but the attempt to do so would produce confusion and litigation between conflicting purchasers, and would necessarily render more uncertain the plan of the state to collect its taxes in that way. If two purchasers should buy there would be unavoidable conflict. Neither would apparently have a right to redeem as against the other, and the result would be that no one would want to buy and the state would have to buy to protect itself. It may be insisted that the state would ultimately get its taxes by a subsequent sale of the land as school land, to which argument I reply that the state does not want the land, but it does stand in need of its revenues and wants them as soon as they are due, and the purpose of the statute is to enable it to collect them by a sale of the land, not to herself but to an individual. The statute was not intended to make the state a speculator in the lands of its citizens, but is purely a measure to enable it to get its revenues without unreasonable delay.

In view of the statute as it was at the time the land in question was sold, and before the statute was amended so as to require the auditor to certify to the sheriff the unredeemed delinquent lands annually, instead of bienially, the same land was twice returned to him as delinquent before he was required to certify it back to the sheriff for sale. It was properly and regularly returned, and he should have ascertained all the taxes due on the land for the several years, with interest to the first of November of the year in which he certified it for sale, and should have combined all the taxes in one certificate. But his failure to do so in the present case is only such an irregularity as is cured by section 25 of chapter 31 of the Code, and the tax purchaser's deed is good by virtue of this section.

Suppose in the present case an individual instead of the state

had bought the land in question for the delinquency for the year 1894 and that both he and the Bucklands and Smith, as tax purchasers, had gotten their deeds from the clerk and had had them recorded, the question would arise which then would have the title? It is suggested that the one who first recorded his deed would have the title. But suppose both deeds were recorded at the same time then which one would have the title? Unquestionably, neither would be in a position to redeem from the other within the year allowed for redemption, because neither would be within the description of the persons entitled to redeem, neither could be said to be a former owner. Suppose again, that in the present case the defendant Bennett and the former owner in whose name the land was sold had both appeared in the suit brought by the commissioner of school lands, and had both claimed the right to redeem, whose right would be superior? In such event Bennett clearly would not have the right of redemption as against the state, because he was a tax purchaser at the same time the state took the land for its taxes for one of the years for which it was delinquent; he, therefore, would clearly not be a redemptioner as against the state. On the other hand, the original owner would have the right of redemption as against the state. But would he have the right of redemption as against Bennett who claimed under a tax deed, apparently regular and duly recorded? I think clearly not. In such case I think the tax purchaser, claiming under a recorded tax deed, would have title against the state, and that the state would still have the right, by any lien against the land, for the unpaid taxes.

I am furthermore of opinion that in order to authorize the state to proceed to sell land under chapter 105, Code (1906), and to give to the decrees of the court in such proceeding a binding force upon claimants, the state must be the owner of the land. The title must necessarily be in the state before it can proceed under this chapter (section 1, chapter 105, Code). This is essential to the jurisdiction in such a proceeding, and if the state has not title the proceeding must necessarily be void. If the state claims the land by forfeiture of some former owner, or by purchase at a tax sale, it must have the title of such former owner before it can proceed to sell the land, and if it has not, in fact, such title the proceeding is without juris-

diction. In the present case the title to the land was vested in Bennett at the time of the bringing of the suit by the commissioner of school lands, and I am of opinion that the whole proceeding is void for want of jurisdiction concerning the subject matter of the suit.

The judgment of the lower court is affirmed.

*Affirmed.*

BRANNON, JUDGE, *(dissenting):*

The decision in this case is rested on *State* v. *West Branch,* 64 W. Va. 673. My opinion of dissent in that case, by accident, did not appear with the Court opinion, but is found in 66 W. Va. 1, and 65 S. E. 1058, to which I refer. It may be a question whether that case exactly applies to this case. It is chapter 31, section 29, of the 1906 edition of the Code, that is made the foundation of decision in that and this case. I do not know that I presented a full view of that section in that opinion. Scanning it further I am confirmed in the opinion that the section does not conclude the state. I think its effect is that it is *prima facie* evidence as to the former owner, his heirs and assigns and persons having right to redeem, as well as the state, and that such estate as section 25 specifies passed by the tax deed, and as to strangers is *conclusive* evidence of such title. Why the clause saying that the section should not bar the state and other taxing bodies from such suit as any one claiming the land could maintain to set aside the sale? It was probably not necessary, this clause, but inserted as a precaution, to prevent any construction that would absolutely bar the state. Clearly a former owner can sue to set aside a tax deed. Cannot the state do so? The same right is reserved to both. How can the Court make the statute an estoppel against the state when the deed is only *prima facie,* and the right to attack it reserved? The Court makes it conclusive. It is conclusive against strangers, not former owners and the state. It has been suggested that the intent was not to make the deed evidence as to the state that the title of those named in section 25 passed, as the state is not seller, or warrantor, had nothing in the land, and why make the act pass anybody's title as against her when she claimed no adverse title; but waive that, and repeat

that it was intended to make the deed only *prima facie* as to the state if she could overcome it.  Preston claims under the state, gets the right she had.  He is not a stranger.

I think the sale for the later year, for a tax paramount to that of the former year, carried the better tax title.  The first purchaser should have paid the tax for the second year.